## Go-Best Assets Limited *vs*. Citizens Bank of Massachusetts & others.[1]

No. 08-P-1235.

Suffolk. April 16, 2009. - May 12, 2011.

Present: Berry, Mills, & Rubin, JJ.

Further appellate review granted, 460 Mass. 1106 (2011).

*Bank. Negligence,* Bank, Misrepresentation, Proximate cause. *Fraud. Conversion. Attorney at Law,* Fiduciary duty. *Fiduciary.*

Discussion of the standard of review applicable to a decision on a motion to dismiss where the motion judge looked beyond the four corners of the complaint and relied upon exhibits attached to an affidavit. [477-478]

In a civil action brought against a bank for its alleged role in a Ponzi scheme perpetrated by an attorney, the Superior Court judge, effectively treating the bank's motion to dismiss as one for summary judgment, erred in dismissing the claim against the bank for negligence, where the record raised a question of fact whether the bank exercised reasonable care when it failed to endeavor to prevent a diversion of funds from a client funds account, which the bank might have done by complying with the requirement of Mass.R.Prof.C. 1.15 to report overdrafts on such an account, or to make reasonable inquiry with respect to the chronic insufficiency of funds in that account; where the record raised a genuine issue of fact whether the account was a trust account subject to the rules of professional conduct, and what the bank knew or should have known about the nature of the account; and where the record, which contained sufficient evidence that the plaintiff incurred damage, raised a genuine issue whether such damage was proximately caused by the bank's negligence. [478-486] Berry, J., dissenting.

In a civil action brought against a bank for its alleged role in a Ponzi scheme perpetrated by an attorney, the Superior Court judge, effectively treating the bank's motion to dismiss as one for summary judgment, erred in dismissing the claim against the bank for aiding and abetting a tort (i.e., fraud, breach of fiduciary duty, and conversion), where, given evidence that a bank employee intentionally and improperly transferred money into a client funds account, a genuine issue of fact existed whether the bank knew of the attorney's fraudulent use of the account. [486-488] Berry, J., dissenting.

In a civil action brought against a bank for its alleged role in a Ponzi scheme perpetrated by an attorney, the Superior Court judge, effectively treating

---

[1]William S. Hawkes, Mark Peters, Frances Allou Gershwin, Bruce W. Edmands, Laurence M. Johnson, and James B. Cox (collectively, the partners).

the bank's motion to dismiss as one for summary judgment, properly dismissed a claim against the bank for misrepresentation, where the complaint did not warn the bank adequately concerning the particular statements that constituted the alleged fraud [488-489]; likewise, the judge properly dismissed claims against the bank for conversion and an accounting [489].

In a civil action brought against the partners in a law firm for their alleged roles in a Ponzi scheme perpetrated by an attorney who, at the relevant time, was a partner in the law firm, the judge properly granted summary judgment in favor of the partners, where, although the evidence in the record supported an inference of knowledge on the part of at least some of the partners that the attorney once misappropriated funds from the law firm's interest on lawyers' trust account, as well as knowledge of a shortfall in a client funds account that the attorney asserted was the reason for the misappropriation, there was no evidence any of the partners knew of the pattern of overdrafts that might have given them awareness that a fraudulent scheme was ongoing. [489-495]

CIVIL ACTION commenced in the Superior Court Department on February 6, 2001.

A motion to dismiss with respect to one defendant was heard by *Allan van Gestel*, J., and the case with respect to other defendants was heard by him on a motion for summary judgment; entry of separate and final judgment was ordered by *Ralph D. Gants*, J.

*Erik H. Langeland* (*Jonathan W. Lubell*, of New York, with him) for the plaintiff.

*Christopher J. Panos* for Mark Peters & others.

*Donn A. Randall* for Citizens Bank of Massachusetts.

*Joel Z. Eigerman*, for William S. Hawkes, was present but did not argue.

RUBIN, J. This action arises from what the plaintiff, Go-Best Assets Limited (Go-Best), alleges was a Ponzi scheme perpetrated by now-disbarred Massachusetts attorney Morris M. Goldings, who at the relevant time was a partner in the law firm of Mahoney, Hawkes & Goldings, LLP (MHG).[2] Go-Best brought this action against Citizens Bank of Massachusetts

---

[2]As is now well known, the perpetrator of a Ponzi scheme solicits money from others by offering to invest it for them. Initial contributors are repaid not with actual proceeds of such investments, which may well never have been made, but with money contributed by subsequent victims. These apparent returns entice yet further investment in the scheme. The perpetrator uses

(Citizens Bank) and several of Goldings's former partners in MHG (the partners) for their alleged role in this scheme.[3] Citizens Bank moved to dismiss the amended complaint. As the judge considered materials outside the pleadings in ruling on the motion, it was effectively one for summary judgment. He granted the motion. The partners subsequently moved for summary judgment, and that motion was also granted. Separate and final judgment entered for Citizens Bank and the partners, from which an appeal was taken. We affirm the judgment for the partners on all counts against them and for Citizens Bank on three of the claims against it. We conclude, however, that with respect to the claims of negligence and aiding and abetting a tort against Citizens Bank, judgment was not appropriate at this early stage of the proceedings.

Although we describe the facts relevant to each claim at issue in this case in greater detail in the respective discussions of those claims below, the following underlying facts are set forth in the first amended verified complaint (complaint).

Prior to the transaction at issue here, Go-Best, a corporation organized under the laws of the British Virgin Islands with a usual place of business in Hong Kong, and an affiliated entity had entered twice into transactions with Goldings in which they lent substantial amounts of money that, they were told, were to be used for the purchase of assets in return for interest on the loans and, if the purchases were successful, a share of the profits when the assets were sold. Go-Best alleges that, seeking to persuade Go-Best of the security of its funds, Goldings offered to hold them in the "Morris M. Goldings Client Account" (the client account) at Citizens Bank. In each case Go-Best or the

---

contributed money for his or her own benefit and conceals the fraud by paying from the pool of collected money those who seek to withdraw their money with its purported accumulated returns. The scheme, of course, is destined to collapse when there is insufficient money left to pay "investors" seeking to withdraw their money. See generally Barron *vs.* Igolnikov, U.S. Dist. Ct., No. 09 Civ. 4471(TPG) (S.D.N.Y. March 10, 2010) (describing the infamous Ponzi scheme of Bernard L. Madoff).

[3]The amended complaint also names Morris M. Goldings, his wife Jean B. Goldings, and PaineWebber, Inc., as defendants. The claims against these defendants are not at issue here. The claim against Morris M. Goldings is stayed indefinitely pending future bankruptcy proceedings. PaineWebber, Inc., settled Go-Best's claims against it. Go-Best voluntarily dismissed its action against Jean B. Goldings.

affiliated entity wired the funds to that account. In these two cases, Go-Best and the affiliated entity received back their initial investment as well as what appeared to be interest and a share of purported profits.

After participating in what it believed had been two very successful investments made by Goldings on its behalf, Go-Best agreed to invest $5 million with Goldings, again as a loan, to purchase, Goldings claimed, a client of Goldings's control of 170,000 shares of stock in Starwood Hotels and Resorts, Inc. Go-Best would receive both interest on the loan and, if the purchase was successful, a portion of the profits, if any. Go-Best asserts that, again, Goldings offered to hold the funds in the client account at Citizens Bank, assuring Go-Best that the funds would be held in trust for Go-Best, and that such accounts were stringently monitored by the bank. The funds would then be transferred to an escrow account with PaineWebber, Inc. Goldings and Go-Best executed an investment agreement and an escrow agreement, and Goldings signed a promissory note to Go-Best in the amount of $5 million. On or about July 14 and July 20, 2000, Go-Best wired the funds in two instalments to the client account.

In December, 2000, following multiple inquiries by Go-Best regarding the status of the Starwood deal, Goldings informed Go-Best that he did not invest the loan as promised, that the documents Goldings had executed were fraudulent, that there were no Starwood shares, and that Go-Best's money was gone because he had used it to pay his other debts. Goldings subsequently pleaded guilty in the United States District Court to multiple counts of mail fraud, wire fraud, and money laundering arising from his fraudulently obtaining funds from clients and from business and professional associates, his conversion of fees payable to his law firm, and his concealment of information from law enforcement and tax authorities. He was disbarred. See Matter of Goldings, S.J.C. No. BD-2001-005 (April 17, 2002) (judgment of disbarment).

As relevant here, Go-Best brought claims in its complaint against Citizens Bank for negligence; misrepresentation; and aiding and abetting breach of fiduciary duty, fraud, and conversion. It brought claims against the partners for aiding and

abetting fraud, conversion, and breach of fiduciary duty. Citizens Bank moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The partners moved for summary judgment. A Superior Court judge granted both motions, rulings from which Go-Best now appeals.

I. *Citizens Bank's motion to dismiss.*

A. *Standard of review.* The judge below disposed of the plaintiff's claims against Citizens Bank on a motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). In deciding the motion, however, the judge looked beyond the four corners of the complaint. In particular, he relied upon exhibits attached to an affidavit of attorney Erik H. Langeland (Langeland affidavit) that was submitted by Go-Best along with its opposition to the defendant's motion to dismiss.[4]

Although the judge did not purport to convert the rule 12(b)(6) motion to dismiss into a motion for summary judgment, "because the judge relied on these supplemental extra-complaint filings in entering dismissal, the ultimate dismissal was, in law, a summary judgment." *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 791 (2005), cert. denied, 546 U.S. 1173 (2006). See *Doe* v. *XYZ Co.*, 75 Mass. App. Ct. 311, 312 (2009).[5] We therefore review the ruling de novo under the familiar summary judgment standard. *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000). We may affirm the judgment in favor of defendant Citizens Bank only if the evidence before the motion judge, viewed in the light most favorable to the nonmoving party, establishes that there are no genuine issues of material

---

[4]The judge denied a motion of Citizens Bank to strike the Langeland affidavit, and in his memorandum and order on Citizens Bank's motion to dismiss, he referred to facts contained therein.

[5]Such a rule 12(b)(6) conversion is typically inappropriate at this stage given the fact that neither party will have had the opportunity to engage in discovery prior to the judge's decision. Under the circumstances, however, application of rule 12(b)(6) conversion appears to have been appropriate. Here, Go-Best submitted the documents that triggered conversion, see *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 892 (1983) ("A party may be held to have constructive notice that the court is treating a rule 12[b][6] motion as a motion for summary judgment when it has, itself, submitted extra-pleading material"), and Citizens Bank, which may have been deprived of the opportunity to submit supporting materials at the motion stage, nevertheless urges us to apply the summary judgment standard on appeal.

fact and demonstrates Citizens Bank's entitlement to judgment as a matter of law. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). "The moving party has the burden of demonstrating affirmatively the absence of a genuine issue of material fact on every relevant issue, regardless of who would have the burden on that issue at trial." *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. 616, 619 (2006).

B. *Negligence.* First, Go-Best's complaint alleges a cause of action for negligence against Citizens Bank. The elements of a negligence claim are long established. A plaintiff must show that the defendant "owed him a duty of reasonable care, that [the defendant] committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage." *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 39 (2009).

The vehicle that Goldings used to defraud Go-Best was designated the "Morris M. Goldings Client Account." Go-Best alleges that the client account was a client "trust account" within the meaning of Mass.R.Prof.C. 1.15(d), 426 Mass. 1363 (1998), that is, an account that holds "funds . . . for clients and in any other fiduciary capacity in connection with a representation, whether as trustee, agent, guardian, executor or otherwise."[6]

Insufficiency of funds in a trust account is a reliable signal that funds in that account are at risk of misappropriation, "revealing as it does a telling disparity between entrusted funds and fiduciary expenditures which, in turn, may be, and often is, indicative of trust withdrawals for nontrust purposes." *Home Sav. of Am., FSB* v. *Amoros*, 233 A.D.2d 35, 41 (N.Y. 1997) (*Amoros*). Consequently, "[disciplinary] counsel" — as well as banks that are subject to the requirements of bar oversight authorities, and attorneys who hold client funds — "nationwide know from experience that a 'bounced check' on a lawyer's trust account is an obvious signal that law clients' money may

---

[6] We refer to the version of rule 1.15 in effect at the time of the events at issue in this case. The parties have pointed to no substantive differences between that version and the current version of the rule. The definition of "trust account" can be found in the current version at rule 1.15(a), as amended, 440 Mass. 1338 (2004).

be in jeopardy." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 288 (2d Cir. 2006) (*Lerner*), quoting from *Amoros, supra* at 39. Indeed, Massachusetts, like other States, requires banks maintaining attorney trust accounts to report to bar oversight authorities when they dishonor for insufficiency of funds a check drawn on a trust account. Mass.R.Prof.C. 1.15(f).

Evidence in the record viewed in the light most favorable to Go-Best indicates that, in the months leading up to the transfer of funds by Go-Best into the client account, the client account was chronically overdrawn. The bank statement for the period ending February 28, 2000, shows that the account was charged two "insufficient funds fees." The statement for the period ending April 28, 2000, shows an ending balance of negative $66,054. The statement for the period ending May 28, 2000, shows an ending balance of negative $11,814.54. And the statement for the period ending June 28, 2000 — presumably the last one prior to the transfer of Go-Best's funds into the account — shows that the account was again charged two "insufficient funds fees." Checks were dishonored throughout this period. One check dishonored in January, 2000, was written for $760,460.

Go-Best asserts that Citizens Bank had a duty of care toward those with funds on deposit in the client account and that, in light of overdrafts in it, this duty required it to "make reasonable inquiries" and to take steps to protect funds on deposit in that account. Go-Best asserts that Citizens Bank breached this duty, and that that breach was a proximate cause of its loss.

1. *Duty and breach.* In determining the scope of the bank's duty of reasonable care, we apply well-established precepts of depositary bank liability. First, in the ordinary case, banks have no duty to monitor the use of deposit accounts they hold. See, e.g., *Kendall* v. *Fidelity Trust Co.*, 230 Mass. 238, 241-242 (1918). See also *Newburyport* v. *First Natl. Bank*, 216 Mass. 304, 304-305 (1914). Second, however, where a bank has sufficient notice of wrongdoing, that notice may give rise to a duty on the part of the bank to make further inquiry, see, e.g., *Eastern Mut. Ins. Co.* v. *Atlantic Natl. Bank*, 260 Mass. 485, 488 (1927) (no liability in the absence of "reason for inquiry which would have led to knowledge" of fraud), or to take steps to prevent a diversion of funds, *Boston Note Brokerage Co.* v. *Pilgrim Trust*

*Co.*, 318 Mass. 224, 227 (1945). Thus, for example, the Supreme Judicial Court has said that when a transaction is a "badge of fraud" it may give rise to "a duty" on the part of the bank "to interfere to prevent" a misappropriation. See *ibid.*

Although there is no Massachusetts case addressing a chronic insufficiency of funds in a client trust account, in applying similar principles in a parallel circumstance (there, as a matter of New York law), the United States Court of Appeals for the Second Circuit vacated the dismissal of some of the plaintiffs' complaints against the defendant banks and stated:

> "As a general matter, a depositary bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation. . . . Nevertheless, a bank may be liable for participation in such a diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly. Having such knowledge, the bank is under the duty to make reasonable inquiry and endeavor to prevent a diversion. . . . Although small overdrafts [in a client trust account] are generally insufficient to trigger a duty of inquiry, the bank's duty may be triggered by chronic insufficiency of funds."

*Lerner*, 459 F.3d at 287-288 (quotations, alterations, and citations omitted).

The reasoning of *Lerner* is persuasive and is consistent with the Supreme Judicial Court's decisions in *Eastern Mut. Ins. Co.* and *Boston Note Brokerage Co.* While we reiterate that banks ordinarily have no duty to monitor the use of funds placed in deposit accounts, under the principles articulated in those Supreme Judicial Court cases, the evidence of Citizens Bank's knowledge of the chronic insufficiency of funds in a client funds account, if proven, would trigger a duty of reasonable care on the part of Citizens Bank to all those who, like Go-Best, subsequently placed funds in that account, to make reasonable inquiry and to endeavor to prevent a diversion.

"We generally consider the . . . questions — whether a

defendant exercised reasonable care, the extent of the damage caused, and whether the defendant's breach and the damage were causally related — to be the special province of the jury." *Jupin* v. *Kask*, 447 Mass. 141, 146 (2006). For this reason, summary judgment is rarely appropriate in negligence cases, and is "especially disfavored" where, as here, knowledge is at issue. *Pratt* v. *Martineau*, 69 Mass. App. Ct. 670, 675 (2007).

Viewed in the light most favorable to Go-Best, the evidence in the record raises a question of fact whether Citizens Bank exercised reasonable care when it failed to endeavor to prevent a diversion, which it might have done by complying with applicable Massachusetts Rules of Professional Conduct, adopted by the Supreme Judicial Court, requiring it to report overdrafts on the client account, see Mass.R.Prof.C. 1.15, or to make reasonable inquiry with respect to the chronic insufficiency of funds in that account.[7] Only a chronic insufficiency of funds, not an isolated overdraft, or overdrafts in small amounts, will trigger a bank's duty. And a "bank's evident default in the performance of its regulatory obligation to make a report of

---

[7]Rule 1.15(f) provides:

> "A lawyer or law firm shall maintain trust accounts [as defined in Rule 1.15 (d)] only in financial institutions which have filed with the Board of Bar Overseers an agreement, in a form provided by the Board, to report to the Board in the event any properly payable instrument is presented against any trust account that contains insufficient funds, and the financial institution dishonors the instrument for that reason" (brackets in original).

Citizens Bank does not dispute that it is such a financial institution. Rule 1.15(f) further specifies that:

> "The dishonored check notification agreement shall provide that all reports made by the financial institution shall be identical to the notice of dishonor customarily forwarded to the depositor, and should include a copy of the dishonored instrument, if such a copy is normally provided to depositors. Such reports shall be made simultaneously with the notice of dishonor and within the time provided by law for such notice, if any."

"[I]t is precisely because trust account insufficiency is considered such a reliable sign of fiduciary misappropriation that depositary banks maintaining attorney trust accounts must make a dishonored check report" to bar oversight authorities when they dishonor for insufficiency of funds a check drawn on a trust account. See *Amoros, supra* at 41.

check dishonor" does not "suffice[] to establish its liability for the loss occasioned by [the defrauder's] misappropriation." But "such default may be adduced as some evidence of the bank's negligence." *Amoros, supra* at 42.

The evidence in the record at this summary judgment stage indicates that, although Citizens Bank was aware of the chronic overdrafts in the client funds account, it never reported dishonored checks to the Board of Bar Overseers, nor did it take any steps to investigate the matter. There is also record evidence with respect to Citizens Bank's motion that, on Goldings's instruction, a Citizens Bank employee, Calvin Wong, once improperly moved $200,000 from MHG's IOLTA (interest on lawyers' trust) account into the client funds account in order to cover an insufficiency of funds in that account. The evidence indicates that, when confronted about this, Wong was nervous and stated, "I never should have done it."

Citizens Bank argues that it owed no duty because this account was not, in fact, a trust account covered by rule 1.15. It argues in the alternative that it did not know the client account was a trust account, if it was.

An account is a trust account subject to the rules of professional conduct, however, if funds in it are held "for clients and in any other fiduciary capacity in connection with a representation." Mass.R.Prof.C. 1.15(d). There is sufficient evidence in the record viewed in the light most favorable to Go-Best indicating that the account held client funds in trust consistent with this definition to present a genuine issue of fact about the nature of the account. Moreover, this account was also labeled a "client account." Rule 1.15(d) requires that trust accounts "shall be . . . clearly identified as 'trust accounts,' 'escrow accounts,' 'client funds accounts,' 'conveyancing accounts,' or 'IOLTA accounts,' or with words of similar import indicating the fiduciary nature of the account."[8] The evidence suffices to raise a question of fact whether the account held client funds such that it was a trust account within the meaning of rule 1.15(d).[9]

---

[8]Not all "trust accounts" are IOLTA accounts. IOLTA accounts are interest-bearing "pooled account[s] . . . for all trust funds which in the judgment of the lawyer are nominal in amount, or are to be held for a short period of time." Mass.R.Prof.C. 1.15(e)(1).

[9]In concluding that the Morris M. Goldings client account "was not" a trust

Assuming the client account was a trust account, whether Citizens Bank knew or should have known that it was also presents a question for the fact finder. The rules of professional conduct state that "[l]awyers or law firms maintaining trust accounts shall take all steps necessary to inform the depository institution of the purpose and identity of such accounts." Mass. R.Prof.C. 1.15(d). In this case, the evidence indicates that Goldings asked that the account be denominated "Morris M. Goldings Client Account." Citizens Bank put that name on it. These facts alone raise a genuine issue as to what Citizens Bank knew or should have known about the nature of the account.

Citizens Bank also argues that, even if the client account was a trust account, any duty Citizens Bank had would have extended only to clients of Goldings or MHG whose funds were deposited in the account. The plaintiff in this case, Go-Best, was not a client. The dissent agrees with Citizens Bank's argument and concludes that the principles articulated in *Lerner* should apply only where the person whose funds were on deposit in a trust account and who alleges they were lost through the bank's negligence was a client of the attorney or firm holding the funds in that account.

Citizens Bank's argument misperceives the nature of the duty. It is foreseeable that any party that allows its funds to be deposited into a trust account may be injured in the event of a fraudulent scheme of misappropriation, whether or not that party was a client. A nonclient party like Go-Best may have reasonably believed that the client account, by its nature as a trust account, was subject to bank supervision. Citizens Bank's duty, and its relationship with those whose funds were deposited in the account, has nothing whatever to do with the technical relationship between the depositors and Goldings. See, e.g., *Lerner*, 459 F.3d at 287-288 (allowing claims brought by all "plaintiffs with funds deposited at that bank" to go forward against each defendant bank).[10] *Lerner*, for example, was an

account, the dissent misperceives the definition of "trust account." If this account was an "account that holds funds . . . for clients and in any fiduciary capacity in connection with a representation," as described above, it was a trust account, regardless of the fact that Go-Best, whose funds the account also held, was not a client.

[10]There were also claims in *Lerner* by plaintiffs who had not deposited

action by depositors in a client trust account. The viability of their claims did not depend upon the bank's "actual knowledge" that these depositors were clients with escrow agreements with the bank.[11] The decision states only that, for purposes of the motion to dismiss, the allegation that the bank knew the account was a client trust account, despite its not being labeled as such, because some escrow agreements had been provided to the bank was sufficient for the claim to survive the motion. See *Lerner*, 459 F.3d at 281 n.2.

Further, and perhaps most important, imposition of a duty running to all whose funds are deposited in client trust accounts, rather than only to clients, does not impose any additional burden upon the bank. If a bank holds a client account, it is required to take reasonable care in the face of chronic overdrafts. This will be true whether the account exclusively holds client funds or not. Indeed, it is likely that the bank will know nothing about the source of any of the particular funds held at any particular time in any client account. To limit recovery only to clients thus would immunize a bank proven to have caused through its negligence losses that would otherwise have been actionable on the arbitrary ground that they happen to have been incurred by nonclients.

Finally, Citizens Bank argues that application of the principles of our case law to impose a duty in the circumstances alleged would "change the landscape of the banking industry and is plainly unworkable as a matter of public policy." This assertion, if true, would raise a matter of serious concern. But the principles we apply today have been similarly applied in New York, the banking center of the United States, where they appear neither to have proven unworkable nor to have led to dramatic consequences for the banking industry. In the absence of evidence to the contrary, this suffices to answer Citizens Bank's objection.[12]

---

funds at the bank. The dismissal of those claims was affirmed because they were "too far removed" from the "banks' failure to report . . . overdrafts." *Lerner*, *supra* at 287.

[11]The dissent is mistaken in its assertion to the contrary.

[12]Go-Best also argues that Citizens Bank owes it a duty as the third-party beneficiary of two different contracts. This theory of liability was not addressed by the motion judge below or by Citizens Bank on this appeal. Since we conclude that Go-Best's negligence claim survives summary judgment on other grounds, there is no need to evaluate this theory on the record before us.

2. *Causation and damage.* As to causation and damage, there is sufficient evidence in the record, viewed in the light most favorable to the nonmoving party, that Go-Best incurred damage. This leaves only the question whether the evidence raises a genuine issue whether any such damage was proximately caused by Citizens Bank's negligence.

Proximate causation is a question of fact ordinarily left to the jury. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983). "Far from being the theoretical and conceptual construct that the appellate decisions sometimes make it seem to be, in this sense [of invoking the jury's view of things] proximate cause is the most practical and realistic of doctrines, for it asks the jury to step back after it has applied the individual pieces of the liability puzzle and look at the whole picture before it makes the final decision." *Heng Or* v. *Edwards*, 62 Mass. App. Ct. 475, 490-491 (2004) (Kaplan, J.) (alteration in original), quoting from Abraham, The Forms and Functions of Tort Law 135 (1997). There is evidence here of a chronic insufficiency of funds, of the bank's failure to report overdrafts or to make further inquiries, and of assistance to Goldings by one of its employees in impermissibly transferring $200,000 out of an IOLTA account and into the client account to cover an insufficiency of funds, all in the months leading up to Go-Best's wire transfer. This evidence, taken in the light most favorable to Go-Best, raises a genuine issue of material fact on the question of proximate cause. See *Lerner*, 459 F.3d at 290 (failure to report, investigate, and, if necessary, safeguard funds could be viewed as proximately causing loss where, even if regulators had not acted in time, the bank "could have acted immediately to protect the funds" in the account had it discovered the earlier misappropriation).

Citizens Bank argues that a causal connection is lacking because there is no evidence in the record that demonstrates Citizens Bank knew of any specific fraudulent transaction involving the funds Go-Best had transferred to the client account. The general rule is that a bank has no liability for a fiduciary's misuse of funds in a fiduciary account absent knowledge of that misuse. See, e.g., *Allen* v. *Fourth Natl. Bank*, 224 Mass. 239, 244 (1916). A bank may presume that a fiduciary will apply funds in such an account to their proper purposes.

But the allegation here is not that the bank has a general obligation to oversee fiduciary accounts. The allegation here is that, through negligent failure to adhere to its legal duties with respect to client trust accounts, a duty triggered only by the chronic insufficiency of funds in this client account, the bank allowed the account to continue operating with the "client account" moniker, and the protections it implied, such that Goldings was able to continue his fraudulent scheme to Go-Best's detriment. In order to find proximate causation the jury thus need not conclude that the bank was aware of the specifics of any particular transaction in the account.[13]

We emphasize that we are not holding that Citizens Bank was negligent in this case. That has not been proven, and it is a question on which we express no opinion; it is one for the fact finder. We conclude only that summary judgment should not have entered on Go-Best's claim of negligence against Citizens Bank and that it must be reversed.

C. *Aiding and abetting.* In light of the evidence described above, again taken in the light most favorable to Go-Best, the portion of the order dismissing Go-Best's claim against Citizens Bank for aiding and abetting Goldings's fraud, breach of fiduciary duty, and conversion must also be reversed. "[U]nder Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides 'substantial assistance or encouragement to the other party;' and (2) the defendant has 'unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.' " *Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 40 (D. Mass.

---

[13]Citizens Bank also argues that Article 4A of the Uniform Commercial Code (UCC), which requires it to credit the beneficiary's account when it receives a wire transfer, see G. L. c. 106, § 4A-104, "supplants" the common-law causes of action brought by Go-Best. This again misperceives the nature of the complaint brought by Go-Best, which does not pertain to the actual crediting of the client account but, rather, alleges that without Citizens Bank's acts and omissions, the client account would not have continued to operate. This is not a situation "[w]here a UCC provision specifically defines parties' rights and remedies [and] displaces common-law theories of liability." *Gossels v. Fleet Natl. Bank*, 453 Mass. 366, 370 (2009). See G. L. c. 106, § 1-103, inserted by St. 1957, c. 765, § 1 ("Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions").

1993), quoting from *Payton* v. *Abbott Labs*, 512 F. Supp. 1031, 1036 (D. Mass. 1981).

Given the evidence that an employee of Citizens Bank intentionally and improperly transferred money into the client account, whether Citizens Bank knew of Goldings's fraudulent use of the client account presents a genuine issue of a material fact. In dismissing these claims, the judge erroneously concluded that the knowledge requirement of aiding and abetting liability cannot be satisfied without proof of Citizens Bank's knowledge of Goldings's particular alleged misuse of Go-Best's funds. Such a reading is too narrow. Our law requires only that "the defendant actually know[] about 'its substantial, supporting role in an unlawful enterprise.' " *Maruho Co.* v. *Miles, Inc.*, 13 F.3d 6, 10 (1st Cir. 1993) (emphasis omitted), quoting from *Kyte* v. *Philip Morris, Inc.* 408 Mass. 162, 168 (1990).

As described above, the chronic overdrafts and insufficiency of funds in the client account demonstrated a very high likelihood of the misuse of the account by Goldings. There is sufficient evidence in the record to raise the question whether Citizens Bank's wrongful transfer of $200,000 into the account, or Citizens Bank's allowing the account to maintain a negative balance, or both, amounted to the knowing provision of substantial assistance in Goldings's scheme.[14] This is particularly so given the statement of Citizens Bank employee Wong, which could support an inference of knowledge of wrongdoing on Citizens Bank's part, that he knew he should never have moved the money from the MHG IOLTA account into Goldings's client account.[15]

The dissent would allow only *clients* with funds on deposit in

---

[14]Not only affirmative acts, but inaction can amount to "substantial assistance" where it occurs in violation of a duty to act, or where it is "accompanied by a conscious intent to assist the primary violation," which can be found where the "alleged aider-and-abettor benefitted" from its inaction. See *Austin* v. *Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 39 (D. Mass. 1993). See *Lerner*, 459 F.3d at 282 (describing branch manager allegedly agreeing not to report insufficiency of funds to bar authorities in order to keep the attorney's business).

[15]Wong's statement is not inadmissible hearsay, because it is offered not for the truth of the statement but to demonstrate Citizens Bank's state of mind. See *G.E.B.* v. *S.R.W.*, 422 Mass. 158, 168 (1996). It therefore may be considered on summary judgment. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). Citizens Bank does not contend otherwise.

the client account to bring an aiding and abetting claim. See *post* at note 6. But again, this misperceives the significance of the character of the person or entity whose funds are on deposit in a client trust account. The ordinary rule is that a tortfeasor is liable for the reasonably foreseeable consequences of its actions. If Go-Best's claims are proven, the injury to any and all individuals with funds on deposit in the client account would have been reasonably foreseeable.

Again, this is not to say that Citizens Bank did indeed provide knowing assistance to Goldings. That has not been proven. But there is at least a genuine issue of material fact about Citizens Bank's state of mind.

D. *Misrepresentation.* Turning to the misrepresentation claim, Go-Best argues before us that Citizens Bank's act of labeling the client account "client account" amounted to the provision by Citizens Bank of false information because it did not provide the oversight that, Go-Best argues, that label implies, and that Go-Best relied upon that misrepresentation to its detriment. Citizens Bank argues that the complaint does not satisfy the heightened pleading standard of Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), which requires that "the circumstances constituting fraud . . . shall be stated [in the complaint] with particularity."

We agree. In various places in the complaint it is alleged that the client account was maintained at Citizens Bank and was labeled "client account," that Go-Best reasonably believed this was a trust account monitored by the bank, that "Goldings had been using the Citizens Bank client funds account to perpetrate criminal activity with the help of Citizens Bank's employees," and that Go-Best reasonably relied to its detriment on "its understanding of the nature" of the client account. Go-Best appears to argue that it can be inferred from the complaint, though it is never in terms asserted, that Citizens Bank falsely labeled the account "client account," and that it did so with knowledge of that falsity.

Nonetheless, the complaint does not anywhere allege that Citizens Bank (even through Goldings) provided Go-Best any material that had the name of the account on it. And the paragraphs asserting Count XIX, which are labeled "Misrepresentation/Fraud," refer to only two alleged "material mis-

representations" (which are in fact alleged material omissions): "Citizens Bank received more than $5 million of Go-Best's money and has concealed what happened to that money. Citizens Bank similarly concealed the fraudulent and unlawful activity that had occurred through Goldings' trust account."

The primary purpose of rule 9(b) is to place the defendant in a fraud case on notice of the specific acts that are alleged to have been fraudulent. In this case the complaint did not "warn[] [Citizens Bank] adequately concerning the particular statements which constituted the alleged fraud so that they could prepare their defense." See *Friedman* v. *Jablonski*, 371 Mass. 482, 488-489 (1976). Consequently, summary judgment on the misrepresentation count was properly granted.

E. *Conversion and accounting.* Finally, summary judgment also properly entered on the other two claims against Citizens Bank. Indeed, Go-Best does not seem to contend otherwise. The evidence is insufficient to create a genuine issue of material fact whether Citizens Bank itself failed to return Go-Best's funds when they were in its possession and Go-Best requested their return, which would be essential to a judgment against Citizens Bank for conversion of the plaintiff's funds. See *Marshall Vessels, Inc.* v. *Wright*, 331 Mass. 487, 489 (1954). See also *Gossels* v. *Fleet Natl. Bank*, 453 Mass. 366, 372-373 (2009). Similarly, there is no evidence to raise a genuine issue whether there was a fiduciary relationship between Go-Best and Citizens Bank. This is an essential element of the cause of action for an accounting. See *Ball* v. *Harrison*, 314 Mass. 390, 392 (1943); *Chedd-Angier Prod. Co.* v. *Omni Publications Intl., Ltd.*, 756 F.2d 930, 937 (1st Cir. 1985). Summary judgment in favor of Citizens Bank on these counts, as well as on the misrepresentation count, will be affirmed.[16]

II. *Motion of Goldings's partners for summary judgment.*

The judge separately granted summary judgment in favor of Goldings's former partners, William S. Hawkes, Mark Peters, Frances Allou Gershwin, and Bruce W. Edmands, on Go-Best's claims of aiding and abetting Goldings's alleged fraud, conver-

---

[16]Citizens Bank does not argue that any claim made by Go-Best is preempted by or otherwise conflicts with any State or Federal statute or regulation, a question on which we consequently express no opinion.

sion, and breach of fiduciary duty. If, viewing the evidence in the light most favorable to the nonmoving party, Go-Best, we find no genuine issue as to any material fact, and the partners have demonstrated their entitlement to judgment as a matter of law, we will not disturb that judgment. *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. at 619.

Viewed in the light most favorable to Go-Best, as relevant to the claims against the partners the summary judgment record reveals the following:

The then managing partner of MHG, William Hawkes, was aware of Goldings's client account. There is deposition testimony of Hawkes that he understood the account to be a trust account subject to rule 1.15 holding funds for clients of MHG, that he was told by Goldings that Goldings held funds in the account on behalf of clients, and that he had no knowledge of Goldings having clients who were not clients of MHG.[17] Both Hawkes and the head of accounting at MHG further testified in depositions that Goldings regularly paid clients' MHG bills out of the client account from funds Goldings said he was holding in that account on their behalf. Hawkes further testified that Goldings was the largest originator of business at the firm.

The record reveals that MHG's own client trust accounts were monitored daily by the firm's accounting department. Margaret Franchi, the controller-accounting manager at MHG, testified in a deposition that disbursements could be made from the MHG accounts only through a disbursement request made to her. The accounting department would have to authorize any such disbursement. The evidence indicates that the accounting department kept records of each separate client fund held within the firm's trust accounts. Before funds could be disbursed, an attorney requesting such disbursement had to, among other things, identify the particular client fund from which the disbursement was being made.

Deposition testimony reveals, however, that, unlike the firm's own trust accounts, the client account was not monitored by anyone at the firm, nor did anyone at the firm (other than Gold-

---

[17]The evidence indicates specifically that Hawkes understood the client account to be an IOLTA account because he did not believe Citizens Bank offered interest-bearing client trust accounts.

ings) have access to the account or its records. Indeed, Franchi testified that at one point Richard Lyon, the firm administrator who apparently began his duties in early 1998, raised with her the possibility of her supervising the client account, which she said she would not do unless the account was audited by providing documentation for each client whose funds were held in the account. She testified, "I [had] worked [previously] for twenty-two years for [Boston law firm] Parker, Coulter [Daley & White] and kept everything in perfect order. There was no way I was going to take an individual account over not knowing what was there." The suggestion was dropped.

In January, 2000, it came to Franchi's attention that $200,000 had been transferred out of the MHG IOLTA account without authorization, and with no indication of whose client funds were being moved. She was informed of this by her supervisee, Nanette LeBlanc, who had noticed the withdrawal in her review of the daily report sent to the firm by Citizens Bank. According to Franchi, LeBlanc said that "she thought it was probably Morris [Goldings]." This supports an inference that, at the least, Goldings was known at the firm for failure properly to follow procedures.

Similarly, Hawkes testified that Goldings frequently did not follow the firm's written case intake policy, saying, "Morris wasn't great at getting engagement letters signed," and that he was "sure there were [other] ways which he did not follow the policy." In addition, Hawkes's testimony indicates that on more than one occasion, Goldings sought to withdraw funds from the MHG IOLTA account when checks depositing funds in that account had not yet cleared, and that Hawkes had always denied such requests.

After discovering the $200,000 missing, Franchi had LeBlanc telephone Goldings. In response, Goldings lied and told LeBlanc that the debiting of the IOLTA account was a bank error — that the bank had mistakenly taken the money out of the firm's IOLTA account, rather than out of Goldings's client account. He told her not to worry about the transfer of funds out of the MHG IOLTA account, and that it would be taken care of within a day. When the funds were not replaced the next day, Franchi telephoned the bank, where she spoke with Wong, the Citizens Bank employee, who, as described above, was "very

nervous" on the telephone and said that he should never have moved the money.

Goldings subsequently telephoned Franchi. He told her to stop telephoning the bank, and that he would take care of getting the money back into the IOLTA account. At this point, Franchi brought the matter to the attention of Hawkes.

According to Hawkes's deposition testimony, Franchi conveyed all this information to him. Hawkes telephoned Citizens Bank and was told that it was not a bank mistake but, rather, that Goldings had specifically instructed the bank to transfer the money out of the firm's IOLTA account and put it in the client account.

Hawkes then had a meeting with Goldings, at which Goldings told Hawkes a different story from what he had told LeBlanc. According to Hawkes, Goldings said that he had moved $200,000 from MHG's IOLTA account in order to satisfy a pre-existing commitment to deliver to a third party funds that Goldings expected a client to deposit into his client account, but which Goldings had not yet received. Hawkes testified that he had a serious conversation with Goldings about the matter and that he, Hawkes, was "pretty angry," stating, "I think I probably lost my cool." Hawkes testified further that he told Goldings that this conduct was "unacceptable," and that Goldings "gave me his word it would never happen again." He testified that he had not asked who the client was, although he "should have," but that he was angry and did not think to ask.

Hawkes testified that he believed that after his conversation with Goldings he discussed the matter contemporaneously with partners Gershwin, Peters, and Edmands. None of the partners took action to report Goldings to bar counsel or to the Board of Bar Overseers, to investigate the circumstances that gave rise to the shortfall in Goldings's client account, to monitor that account, or to prevent Goldings's continued misappropriation of funds from that account. Franchi testified that she had "no idea" why an exception from oversight was made for the Goldings client account.

The complaint does not assert a negligence claim against the partners, but rather three claims of aiding and abetting.[18] As

[18]Go-Best may be collaterally estopped from bringing a negligence claim

with Go-Best's aiding and abetting claims against Citizens Bank, we review the summary judgment record for evidence that the partners provided substantial assistance or encouragement to Goldings, while possessed with knowledge of his tortious conduct or scheme. We will assume without deciding that the record raises a jury question whether the partners' inaction in failing to monitor the client account amounted to the provision of "substantial assistance" to Goldings, permitting us to turn to the question of the state of the partners' knowledge.[19]

---

against the partners because, in a prior proceeding involving the bankruptcy of MHG, the Bankruptcy Court determined that the partners owed Go-Best no duty of care. *In re Mahoney Hawkes, LLP,* 334 B.R. 41, 53-54 (Bankr. D. Mass. 2005). See *Whitehall Co.* v. *Barletta,* 404 Mass. 497, 501-502 (1989) (applying Federal rule allowing nonmutual offensive use of collateral estoppel because when determining what preclusive effect to give to Federal court judgments, Federal rules of collateral estoppel apply). The partners argue that Go-Best is also collaterally estopped from asserting that the firm profited from Goldings's misdeeds. But the issues in the Bankruptcy Court case were limited to whether Go-Best was a client of MHG, by virtue of its transactions with Goldings, and whether the partners of MHG could have foreseen Go-Best's reliance on their oversight of the client account. *In re Mahoney Hawkes, LLP, supra.* The Bankruptcy Court did not purport to decide whether the firm failed, for its own benefit, to make inquiry into Goldings's misuse of client funds (including funds in the firm's IOLTA account) or whether its omissions "substantially assisted" Goldings's tortious enterprise.

[19]Substantial assistance may be found where a defendant affirmatively assists, helps conceal, or in some circumstances fails to act, thereby enabling the breach to occur. See *Austin* v. *Bradley, Barry & Tarlow, P.C.,* 836 F. Supp. at 40. In this case, the evidence indicates only inaction by the partners. Go-Best attempts to characterize the $200,000 taken by Goldings from the MHG IOLTA account as effectively a "loan" by the partners to Goldings and, thus, as an act of affirmative assistance to him. But that is not a fair characterization. Go-Best also argues that the partners' inaction could amount to substantial assistance because the partners had a duty to their clients to monitor the account, see, e.g., *Graham* v. *Securities & Exch. Commn.,* 222 F.3d 994, 1005-1006 (D.C. Cir. 2000) (experienced professional aided securities violations when she breached "independent duty to use diligence where there are any unusual factors" [quotation omitted]); because they had a duty to report the misappropriation of funds in the MHG IOLTA account, see Mass.R.Prof.C. 8.3(a), as amended, 430 Mass. 1326 (1999); and because they consciously intended to assist Goldings as evidenced by, Go-Best alleges, their "benefit[ing] from [their] silence," *Austin* v. *Bradley, Barry & Tarlow, P.C.,* 836 F. Supp. at 40. We express no opinion whether any of these theories of the partners' inaction could amount to provision of substantial assistance, or whether the evidence in the summary judgment record raises a factual question about any or all of them. Go-Best does not argue that the partners owed a duty of care to Go-Best itself, which, as described at note 18, *supra,* it may be collaterally estopped from doing.

Each aiding and abetting claim requires knowledge by the defendant of the principal's wrongdoing. See, e.g., *Spinner* v. *Nutt*, 417 Mass. 549, 556 (1994) ("plaintiff must show that the defendant knew of the [wrongdoing] and actively participated in it such that he or she could not reasonably be held to have acted in good faith"). The partners argue that they may not be held liable without knowledge of the specific acts perpetrated upon Go-Best, something of which there is no indication in the summary judgment record. But the allegation at the root of all of Go-Best's claims of aiding and abetting against the partners is that Goldings engaged in an ongoing, fraudulent Ponzi scheme, of which Go-Best was only one of the victims. The partners could be found to have aided and abetted the unlawful scheme without specific knowledge about the Go-Best transaction. See, e.g., *Fine* v. *Sovereign Bank*, 634 F. Supp. 2d 126, 137 (D. Mass. 2008). The question before us in addressing the aiding and abetting claims thus is whether the summary judgment record raises a fact question about the partners' knowledge that Goldings was engaged in such a fraudulent scheme. See *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. at 623.

The evidence here falls short. Read in the light most favorable to Go-Best, the evidence supports an inference of knowledge on the part of at least some of the partners that Goldings once misappropriated funds from the firm's IOLTA account, and knowledge of the shortfall in the client account that Goldings asserted was the reason for that misappropriation. But there was no evidence any of the partners knew of the pattern of overdrafts that might have given them awareness that a fraudulent scheme was ongoing. There was also, it is true, evidence that Goldings sought to disburse funds in client accounts even before the checks for those funds had cleared, but this evidence, unlike evidence of a chronic insufficiency of funds, is not indicative of ongoing wrongdoing. And there is also evidence that would support an inference that Goldings did not always pay attention to other firm policies which may have been rooted, at least in part, in ethical requirements.

But, again, this does not support an inference of knowledge of an ongoing unlawful scheme. Even if the evidence would raise a jury question whether some or all of the partners should

have known of Goldings's conduct, indeed, even if it were sufficient to raise an issue of recklessness — both questions we need not and do not address — the summary judgment record does not support an inference that they did know.

To be sure, in some jurisdictions deliberately taking steps to avoid knowledge of wrongdoing has been held to satisfy the knowledge requirement. This is widely true in criminal prosecutions for aiding and abetting. See, e.g., *United States* v. *Guerrero*, 114 F.3d 332, 343 n.12 (1st Cir. 1997) ("Where ' "the facts suggest a conscious course of deliberate ignorance," ' a jury is warranted in finding the defendants' deliberate ignorance of criminal events, which is tantamount to knowledge" [citations omitted]); *United States* v. *Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990) ("A deliberate effort to avoid guilty knowledge is all the guilty knowledge the law requires"). Some courts have also applied this reasoning in civil actions for aiding and abetting tortfeasors. See, e.g., *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (applying New York Law); Lautenberg Found. *vs.* Madoff, U.S. Dist. Ct., No. Civ. A. 09-816(SRC) (D.N.J. September 9, 2009).

But the requirement set out by the Supreme Judicial Court of knowledge of wrongdoing in the context of aiding and abetting liability, see, e.g., *Spinner* v. *Nutt, supra* at 556-557, does not by its terms extend to such conscious avoidance, sometimes also called "wilful blindness" or a "conscious course of deliberate ignorance." In the absence of a clearer indication by that court concerning the scope of the requirement of knowledge, we read its decisions not to permit a finding of aiding and abetting liability solely on a conscious avoidance theory. Consequently, we need not and do not decide whether the evidence would raise a jury question whether the partners deliberately acted to avoid knowledge of Goldings's fraudulent scheme.

III. *Conclusion.*

Insofar as the judgment dismisses the plaintiff's claims against defendant Citizens Bank for negligence and aiding and abetting Goldings's fraud, breach of fiduciary duty, and conversion, the judgment is reversed. All remaining portions of the judgments are affirmed.

*So ordered.*

BERRY, J. (dissenting in part and concurring in part). I dissent from all parts of the majority opinion which hold that the complaint stated any legally cognizable claim upon which relief can be granted against Citizens Bank of Massachusetts (Citizens Bank).[1]

1. *This was not an attorney-client or fiduciary account under Mass.R.Prof.C. 1.15.* The relationship between Goldings and Go-Best Assets Limited (Go-Best) was *not* one of attorney-client. This was *not* an individual or pooled IOLTA attorney-client account under Mass.R.Prof.C. 1.15, 426 Mass. 1363 (1998). Morris M. Goldings was *not* holding funds for Go-Best, either as a lawyer, or as a fiduciary in connection with legal representation subject to the provisions of rule 1.15.[2,3] To the

---

[1] I concur with the majority that the Go-Best Assets Limited (Go-Best) claims against Citizens Bank for misrepresentation, conversion, and an accounting were all correctly dismissed. I also concur with the majority that the claims against the partners were correctly dismissed.

[2] Paragraph (d) of Mass.R.Prof.C. 1.15 describes funds held by the attorney in trust as follows.

> "*Funds held in trust include funds held for clients and in any other fiduciary capacity in connection with a representation,* whether as a trustee, agent, escrow agent, guardian, executor, or otherwise. Whenever 'client' or 'clients' is referred to in this rule, it shall be intended to refer to any person or entity on whose behalf a lawyer or law firm holds funds in trust."

Paragraph (e) of Mass.R.Prof.C. 1.15 states that an attorney who holds trust funds must deposit them in one of two types of interest-bearing accounts, either a "pooled account ('IOLTA account') for all trust funds which in the judgment of the lawyer are nominal in amount, or are to be held for a short period of time," or "for all other trust funds, an individual account with the interest payable as directed by the client."

[3] Beyond the fact that the complaint does not allege that Goldings was acting as an attorney, or holding funds as a fiduciary in connection with legal representation, there is a substantial question in this case whether the Mass.R. Prof.C. 1.15 reporting requirements by a bank would be implicated in any event. Paragraph (f)(1) of Mass.R.Prof.C. 1.15 provides that an attorney must use a bank that agrees to provide notice to the Board of Bar Overseers of "bounced" checks on a client account, or fiduciary account held in connection with legal services. The provision states as follows.

> "A lawyer or law firm shall maintain trust accounts [as defined in Rule 1.15 (d)] only in financial institutions which have filed with the Board of Bar Overseers an agreement, in a form provided by the Board, to report to the Board in the event any properly payable instrument is

contrary, this was a wholly commercial deal in which Goldings stole $5 million in funds that had been wired to the Citizens Bank account by the financing entity, Go-Best, and that were supposed to be used by Goldings for the purchase of stock in Starwood Hotels and Resorts, Inc., thereafter with Go-Best and Goldings to share in the profits.

While it so happened in this structured commercial transaction with Go-Best that Goldings, in place as the go-between,[4] turned out be a dishonest criminal broker who pilfered the $5 million stock investment funds, Goldings's criminal scheme does not recast the nature of what was nothing more nor less than an investment deal. Cutting a wide swath of criminal activity, Goldings was ultimately the subject of Federal indictments and convictions in what was a multimillion dollar criminal enterprise. See United States *vs.* Goldings, U.S. Dist. Ct., No. 01-CR-10433 (D. Mass. February 21, 2002). That Goldings in furtherance of his criminal acts placed the moniker of "Morris M. Goldings' Client Account" on this Citizens Bank account does not, by alchemy, make the account an attorney-client account, and does not mean that Citizens Bank has civil liability under rule 1.15 for Goldings's commercial investment based theft.

The deal remained a business deal, not a case involving attorney-client representation, and not a case involving fiduciary funds being held by Goldings in connection with legal representation. Hence, contrary to the majority, I fail to see the predicate for the imposition of any duty of care and potential liability on the part of Citizens Bank under Mass.R.Prof.C. 1.15. Accordingly, I dissent from the majority, which seeks to utilize

---

presented against any trust account that contains insufficient funds, and the financial institution dishonors the instrument for that reason."

Thus, the triggering event under Mass.R.Prof.C. 1.15 for a bank's reporting obligations to the Board of Bar Overseers occurs when there is "any trust account that contains insufficient funds, and the financial institution dishonors the instrument for that reason." Here, the Go-Best complaint does not allege dishonoring of a check but, rather, that Goldings stole Go-Best funds.

[4]Why Go-Best needed, or wanted, a middleman is not discernible on the record. According to the complaint. Go-Best is a corporation organized under the laws of the British Virgin Islands, with a usual place of business in Hong Kong.

Mass.R.Prof.C. 1.15 to create a new theory of Massachusetts banking law that moves far beyond the attorney-client underpinnings of that rule of professional conduct.

Indeed, given the absence of Massachusetts law, in seeking to extend the attorney professional conduct provisions of Mass. R.Prof.C. 1.15, so as to impose liability upon Citizens Bank, the majority relies heavily on the law of other jurisdictions, particularly New York State law. In the first place, this is simply not what the law of Massachusetts is. Rather, as the majority acknowledges, the law of Massachusetts is that "banks have no duty to monitor the use of deposit accounts they hold." *Ante* at 479. See, e.g., *Newburyport* v. *First Natl. Bank*, 216 Mass. 304, 304-305 (1914). See also *Kendall* v. *Fidelity Trust Co.*, 230 Mass. 238, 241-242 (1918). Second, the two most extensively cited, and quoted, New York cases, which are central and at the core of the majority opinion, were *not* commercial transaction cases, such as this one. Hence, while the majority heavily relies upon, and oft quotes from, *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 288 (2d Cir. 2006) (*Lerner*), which in turn rests on, and quotes from, *Home Sav. of Am., FSB* v. *Amoros*, 233 A.D.2d 35, 41 (N.Y. 1997) (*Amoros*), these two cases are inapposite.[5] Unlike this case, in *Lerner* and *Amoros*, the banks were alleged to have had actual knowledge that funds were being held pursuant to agreements between the attorney and clients, that withdrawals by the attorney were subject to restrictions, and that continuing overdrafts signified a breach in the attorney's fiduciary obligations to clients. These two New York cases, then, present as quintessential attorney-client cases with overdrafting problems. The two cases do not present, as does this one, as a commercial business transaction case with a several million dollar criminal theft — surely not an attorney overdrafting problem. Indeed, in *Lerner*, the United States Court of Appeals for the Second Circuit expressly notes that "[a]s a general matter, a depositary bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from

---

[5]To illustrate, in the part of the opinion seeking to impose a legally cognizable duty of care on the part of Citizens Bank (such that the complaint should not have been dismissed), the majority commences its analysis, *ante* at 480, with a lengthy quotation from *Lerner*, in turn quoting from *Amoros*, and then, throughout the opinion appear many more bits and pieces quoted from *Lerner*.

fiduciary misappropriation." *Lerner, supra* at 287, quoting from *Norwest Mort. Inc.* v. *Dime Sav. Bank of N.Y.*, 280 A.D.2d 653, 654 (N.Y. 2001). The majority takes bits and pieces of *Lerner* and ignores this fundamental reservation.

In conclusion, nothing in the majority supports, as matter of Massachusetts law, the imposition of liability against Citizens Bank. Rule 1.15 simply does not apply. The New York cases do not alter that fundamental inadequacy.

To the extent the majority suggest that a legally cognizable claim might be stated against Citizens Bank in negligence, the analysis, I believe, has the same error as the analysis pertaining to rule 1.15, in that the negligence theory of liability spun out in the majority also erroneously assumes the client account was a trust account (see *ante* at 483) — which the account was *not*. Beyond the foregoing, this negligence part of the majority opinion would craft an expansive and not hitherto known duty of care on banks to noncustomers. The concept suggested in the majority would require a bank to monitor deposits and withdrawals in a given account, even though wholly unrelated in time, source, and character, in order to avoid liability to future depositors in the account who would, in effect, seek to have the bank act as an insurer of the trustworthiness of the account owner.

2. *The aiding and abetting claims lack an essential knowledge element on the part of Citizens Bank.* I also dissent from part I.C. of the majority opinion, which relates to the aiding and abetting fraud, breach of fiduciary duty, and conversion claims, and which holds that these claims were not subject to dismissal. There is, I believe, a problem common to all of Go-Best's aiding and abetting tort claims.

A principal requirement for a claim for aiding and abetting a tort is that the aider and abetter have actual knowledge of the principal tortfeasor's wrongdoing. As the motion judge aptly observed, "the plaintiff must show that the defendant knew of the breach and actively participated in it." *Spinner* v. *Nutt*, 417 Mass. 549, 556 (1994). "Massachusetts courts have made clear that a defendant 'aids and abets' a tortfeasor only if, at the least, the defendant actually *knows* about 'its substantial, supporting role in an unlawful enterprise.' " *Maruho Co.* v. *Miles, Inc.*, 13 F.3d 6, 10 (1st. Cir. 1993) (emphasis original), quoting from

*Kyte* v. *Philip Morris, Inc.*, 408 Mass. 162, 168 (1990).[6] "[T]he elements of the tort of aiding and abetting a fiduciary breach are: (1) there must be a breach of fiduciary duty, (2) the defendant must know of the breach, and (3) the defendant must actively participate or substantially assist in or encourage the breach to the degree that he or she could not reasonably be held to have acted in good faith." *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. 616, 623-624 (2006).

Furthermore, the Go-Best complaint did not allege that Citizens had actual knowledge that there were restrictions upon Goldings making withdrawals of the Go-Best funds in Goldings's client account, such that the investment agreement and related documents restricted the transfer of the Go-Best funds wired to Citizens Bank to an escrow account with PaineWebber, Inc. "Massachusetts law is clear, moreover, that banks do not have a duty to depositors to make inquiry as to withdrawals by an authorized person that do not contravene an express limitation on his authority to draw on the account." *Schlichte* v. *Granite Sav. Bank*, 40 Mass. App. Ct. 179, 181 (1996). Accord *Spinner* v. *Nutt*, 417 Mass. at 556.

For these reasons, I respectfully dissent.

---

[6]As a substitute for actual knowledge, the complaint and the majority cite Goldings's prior misdeeds. But there is a disconnect between trying to draw a line between this investment deal and the prior attorney-client misdeeds by Goldings, wherein Goldings was acting as an attorney and overdrafting on client-deposited, entrusted accounts. The shadow of Goldings's prior misdeeds as attorney responsible for client funds does not somehow extend so far as to create a special rule of bank liability under rule 1.15 in a purely commercial deal.

In contrast to prior attorney-related misdeeds, Goldings had a past successful investment history with Go-Best. Prior to this investment, Goldings had engaged in two investment deals using funds loaned to him by Go-Best. In both instances, Goldings had repaid the loans to Go-Best, with interest and profits, in accordance with written investment agreements.