EASTERN MUTUAL INSURANCE COMPANY *vs.* THE
ATLANTIC NATIONAL BANK OF BOSTON.

Suffolk. March 15, 1927. — July 1, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Bills and Notes,* Validity, Holder in due course, Memorandum on check. *Bank and Banking. Fraud. Evidence,* Presumptions and burden of proof. *Notice.*

A bank, which receives checks of a corporation on another bank, signed by an officer with authority from the corporation so to sign but fraudulently drawn by that officer, collects the checks and places their proceeds in a deposit in the officer's personal name, is liable to the corporation

only when it is privy to the depositor's fraud; the burden of proving such privity is on the party who asserts it.

A finding that such privity existed is not warranted, in a suit in equity by the corporation to fix such a deposit with a trust in its favor, where it appears merely that such funds were the proceeds of twenty checks wrongfully drawn by the treasurer payable to his own order on the plaintiff's account in the other bank, that the checks were deposited, two in each of the months of January, February, April, June and July, one in May, September, and November, four in August, and three in October of a certain year; that one, the first, was in the sum of $13,500, nine were for $1,000; four were for $2,500, three for $1,500, two for $2,000, and one for $5,000; that they were numbered 1981 through 1996, and 2474 through 2477, those bearing the higher numbers being deposited before those bearing the lower numbers; and that each check bore on its face at the left hand side a ruled space for an account with the heading "By indorsement this check is accepted in full payment of the following account," and, at the foot, the words "If incorrect please return No receipt necessary," in which space the treasurer had written the word "Securities."

A bank receiving a check with a memorandum upon it such as is above described is not bound to take notice of the memorandum.

The mere fact, that the checks above described were signed in the plaintiff's name by the treasurer as such and were payable to his own order, was not in itself notice of improper conduct sufficient to put the holder upon inquiry.

BILL IN EQUITY, filed in the Superior Court on May 24, 1926, to impress with a trust in favor of the plaintiff the proceeds of certain checks wrongfully drawn by its treasurer upon its account with Boston Safe Deposit and Trust Company and deposited by him to an account standing in his own name with the defendant.

In the Superior Court, the suit was heard by *Sisk,* J., upon a case stated. Material facts are stated in the opinion. The judge, without making a decision, reported the suit to this court for determination.

*R. G. Dodge,* (*P. G. Carlton* with him,) for the plaintiff.

*F. H. Nash,* for the defendant.

WAIT, J. The plaintiff, a mutual insurance company, seeks to compel the defendant, a national bank, to account for and pay over to it the amount of twenty checks drawn on the Boston Safe Deposit and Trust Company by one Jackson, the then treasurer of the plaintiff, payable to his order as an individual and deposited by him in his personal account in the bank. It is agreed that "Throughout the year 1924

and for several years before the plaintiff had a deposit account subject to checks drawn by Jackson as treasurer in the Boston Safe Deposit and Trust Company of Boston. Throughout 1924 and for several years before, Jackson had a deposit account of his own with the defendant. He appropriated funds of the plaintiff to his own use by drawing as treasurer from time to time twenty checks on the bank account of the plaintiff with the Boston Safe Deposit and Trust Company, each of which was made payable by him to his own order, indorsed by him 'For deposit, C. S. Jackson,' and deposited by him on his personal account with the defendant. The proceeds were then checked out by him from time to time for his own purposes and benefit. There was no limitation known to the defendant upon Jackson's authority to draw checks as treasurer, except such as the law would impose. . . . The defendant in the ordinary course of business credited the checks in the above list to Jackson's personal account and promptly presented them through the clearing house to the drawee which immediately paid them and charged them against plaintiff's account and once a month sent them to plaintiff with a statement of account in an envelope addressed to Jackson, who concealed these checks from the plaintiff's other officers and employees. Jackson also deposited on his personal account with the defendant from time to time other funds not derived from checks drawn on plaintiff's bank account. The defendant never received any part of the proceeds of the checks in the above list for its own use or in payment of any indebtedness to it but paid out the amounts from time to time upon Jackson's checks. Jackson's account was never overdrawn and defendant never made any charge to him for banking privileges. The defendant acted throughout in good faith and had no knowledge or notice of any want of authority or improper conduct on the part of Jackson unless chargeable with knowledge or with want of good faith from the form of the checks and the other facts" which are referred to in this opinion.

The checks were deposited at various times: two in each of the months January, February, April, June, and July;

one in May, September, and November; four in August, and three in October, 1924. Nine of them were for $1,000 each; four for $2,500 each; three for $1,500 each; two for $2,000 each; one for $5,000; and one, the first, dated January 3, 1924, for $13,500. They bore consecutive numbers from A1981, through A1996, and from A2474, through A2477; but those bearing the higher numbers were deposited before those bearing the lower ones. Each check bore on its face at the left hand side a ruled space for an account with the heading "By endorsement this check is accepted in full payment of the following account," and, at the foot, the words "If incorrect please return No receipt necessary." In this space Jackson had written the word "Securities." A transcript of Jackson's account with the bank was in evidence. His wrongful misapplication of the plaintiff's funds to his own purposes was discovered in December, 1924.

The law is settled that "A banker having no interest in the matter, who pays out money on deposit on the fraudulent order of the person who by the terms of the deposit had the right to draw on the account, is liable only when he is privy to the depositor's fraud." *Newburyport* v. *First National Bank of Boston*, 216 Mass. 304, citing *Allen* v. *Puritan Trust Co.* 211 Mass. 409, and *Gray* v. *Johnston*, L. R. 3 H. L. 1.

The burden of proving the banker privy to the fraud is on the party who asserts it. *Allen* v. *Fourth National Bank*, 224 Mass. 239, 244. There is here no evidence to establish privity unless it be that the checks drawn by Jackson as treasurer and payable to his order in his individual capacity, the word "Securities," in the account on the face of the checks, or the reverse numbering of the several checks and the state of the account, require inferences of knowledge or of reason for inquiry which would have led to knowledge.

There is nothing to cause suspicion in the account. Nor do the numbers on the checks justify an inference of wrongdoing. A bank cannot be expected, when a check is presented for deposit or payment, to compare the number which it bears with that on all other checks, drawn by the

same depositor, then in its hands. There is no good reason to expect that checks will be presented in the order of their issue. There is no evidence that the bank kept a record of the numbers; and, unless it did, it would not have perceived the reverse sequence of numbers which looks so suspicious when the series from January to November is shown in a single list.

It is argued that the word "Securities" should have occasioned inquiry because of G. L. c. 175, § 64, which forbids an officer in a corporation like the plaintiff to be interested pecuniarily in any purchase, sale, or loan of its funds. The law presumes that persons are acting honestly, and there are many ways in which the treasurer of such a company could rightfully be paid money in transactions with securities. Moreover, it has been held that a bank paying or receiving a check with such a memorandum upon it is not bound to take notice of the memorandum. *State National Bank* v. *Dodge*, 124 U. S. 333, 346. *State National Bank* v. *Reilly*, 124 Ill. 464, 473.

The memorandum was matter of accounting placed upon the paper for the convenience of the drawer, and did not form part of the order to make payment addressed to the bank. *State National Bank* v. *Dodge, supra.* It is not like writing which enters into and forms part of the contract evidenced by the paper or embodied in it, such as was dealt with in *Costelo* v. *Crowell*, 127 Mass. 293, *Smith* v. *Burgess*, 133 Mass. 511, *Shaw* v. *Methodist Episcopal Society in Lowell*, 8 Met. 223, *Wheelock* v. *Freeman*, 13 Pick. 165, 168, and similar cases cited by the plaintiff.

Decisions have been in conflict with regard to the effect, as notice of wrongdoing, that a check, signed by an officer of a corporation or by one in a fiduciary capacity, is payable to the officer or trustee personally from a deposit of the funds of the corporation or trust estate. The consistent decisions of this court and the weight of authority establish that the form of such a check is not in itself notice of improper conduct sufficient to put the holder upon inquiry. *Kendall* v. *Fidelity Trust Co.* 230 Mass. 238, and cases cited at page 242. *Johnson & Kettell Co.* v. *Longley Luncheon Co.*

207 Mass. 52. *Ashton* v. *Atlantic Bank,* 3 Allen, 217. *Whiting* v. *Hudson Trust Co.* 234 N. Y. 394. *Corporation Agencies, Ltd.* v. *Home Bank of Canada,* [1927] A. C. 318. *Empire Trust Co.* v. *Cahan,* 274 U. S. 473, decided by the Supreme Court of the United States since this case was argued, which overrules *Cahan* v. *Empire Trust Co.* 9 Fed. Rep. (2d) 713, cited by the plaintiff.

The only infirmity in these checks was Jackson's intent to use the proceeds for his own and not for the purposes of the company. Their form is not sufficient evidence of that infirmity to show that the bank had knowledge of facts such that its action in dealing with them amounted to bad faith. G. L. c. 107, § 79. Nor is there, apart from this or taken with it, sufficient evidence that the defendant was other than a *bona fide* holder in due course. *Shawmut National Bank* v. *Manson,* 168 Mass. 425.

It follows that, upon the report and the case stated, the plaintiff has failed to establish bad faith on the defendant's part; and that a decree must enter dismissing the bill with costs.

*So ordered.*