Wilson, J.
This is an action of contract in which the plaintiff seeks to recover the amount due on a deposit made by the plaintiff with the defendant and which was claimed to have been wrongfully withdrawn by the president of the plaintiff corporation.
There was evidence at the trial tending to show that an account was opened by the president of the plaintiff corporation with the Winter Hill Co-operative Bank; that later said bank was converted into the Winter Hill Cooperative Federal Savings and Loan Association of Somerville, the defendant in this action; that on the original opening of the account, the signature card of the bank was signed in the following manner: “Widger Miller *172 Corp., Emerson J. Coldwell, Pres.”; that when the bank was converted into the present defendant, a new signature card was signed, reading as follows:
“Individual Share Account Acet. No. 19372
Wedger Miller Corp.
I hereby apply for membership and a savings share account in the WINTER HILL CO-OPERATIVE FEDERAL SAVING-S AND LOAN ASSOCIATION OF SOMERVILLE, MASS, and for the issuance of evidence of membership in the approved form. Receipt is hereby acknowledged of a copy of the charter and by-laws of the association. A specimen of my signature is shown below and the association is hereby authorized to act without further inquiry in accordance with writings bearing such signature.
Signature Widger Corp., By E. J. Coldwell Pres., Street Address 614 Memorial Drive ’Phone No...
City and State Cambridge Mass. Occupation......
Dated 8-31 1937 Date of Birth..........”
It did not appear that any officer or director of the plaintiff corporation, except said president, saw either of said cards. The original pass book and the new pass book issued by the converted bank were in the name of “WidgerMiller Corporation.” The original book was in the possession of the plaintiff corporation and the second book was kept in the cash box of the corporation, in its office, up to' March 1939, when it was removed by said president. That from time to time, since the opening* of the account and continuing* up to September 1938, deposits were made in said account, by various officers of the company; that all of the funds deposited in said account came from the treasury of the plaintiff corporation; that said president, Mr. Coldwell, although never expressly authorized so to do, withdrew all funds from said account, amounting to $355.11, *173 and converted the same to his own use; that he was never expressly authorized by the directors of said plaintiff corporation to withdraw any funds from this account; that the said funds were withdrawn from the said account by Mr. Coldwell in the following manner: $281.50 on March 16,. 1939, when a check was drawn by the defendant bank payable to Widger-Miller Corporation. Said check was immediately endorsed “Widger-Miller Corporation by Emerson J. Coldwell, President,” presented to the defendant bank and cashed by said president. The balance of said account, $53.61, was withdrawn in like manner on March 24, 1939; that the withdrawal of said fund was unknown to any other officer or member of the plaintiff corporation until April 1939; that said account was first opened in said bank by Mr. Coldwell without the knowledge of the directors or other officers of the corporation, but it was agreed in the argument of the case before us that the evidence warranted a finding by the trial judge that the continuance of said account was ratified by the officers and directors of the plaintiff corporation.
There was also testimony tending to show that it was the general practice of the defendant bank, where an account is opened in the name of a corporation, to get an instrument from said corporation showing authorization for withdrawals, but no such authorization was obtained in connection with the deposit referred to; that said Cold-well had authority to sign checks, but said authority definitely ceased about June 1, 1938, a portion of which time checks were signed jointly by him and another officer of the company; that said Coldwell, in addition to being president and director, was also general manager of the corporation.
*174 The plaintiff seasonably presented seven requests for rulings.
The judge denied the first, second, third, fourth, sixth and seventh, and gave the fifth, and made a general finding for the defendant. That his finding was for the defendant does not appear from the report but does appear from the docket entries in said action.
Said requests are as follows:
1. On all the evidence, the defendant had no authority or right to pay the funds on deposit with the defendant Bank by the plaintiff to the President of the plaintiff, Emerson J. Coldwell, and, therefore, the plaintiff is entitled to recover as set forth in its declaration.
2. The defendant paid the funds of the plaintiff on deposit in its Bank to a person unauthorized by the plaintiff to receive such funds.
3. The defendant knew or should have known that Emerson J. Coldwell had no authority to withdraw funds of the plaintiff corporation on deposit with the defendant and the defendant, therefore, in giving such funds to the said Coldwell became liable to the plaintiff for the amount thereof.
4. If the defendant had in its files no authorization from the plaintiff with respect to the payment of funds of the plaintiff on deposit with the defendant, there was no implied authority for the defendant to pay such funds to the President of the plaintiff Company.
5. The funds on deposit in the defendant Bank, represented by Book #19372, belonged to the plaintiff Company.
6. The defendant had no legal right to pay said funds ■ to.anyone except such as was authorized by the plaintiff.
7. The plaintiff never authorized the defendant to pay out of the plaintiff’s funds on deposit with the defend- . ant on the signature of Emerson J. Coldwell.
*175 Although the report does not purport to contain all the evidence, (see Vengrow v. Grimes, 274 Mass. 279; La-France Industries v. Boston, 276 Mass. 60, 61; Barnes v. Springfield. 268 Mass. 497, 504;) we think the case comes within Ready v. Pinkham, 181 Mass. 351, 354, where the court said:
“We are inclined to construe the exceptions as presenting rulings of law . . . rather than as founded on findings of different facts which nowhere appear.”
See also Morgan v. Murdough, 216 Mass. 502, 505; Nelligan v. Fontaine, 225 Mass. 329, 330; Swistack v. Paradis, 288 Mass. 377, 380.
The duty of a trial judge, sitting without a jury, has been stated many times. In Adamaitis v. Metropolitan Life Insurance Co., 295 Mass. 215, 219, the court stated the rule as follows:
“He must adopt correct rules of law for his guidance and find the facts as guided by these rules. And upon proper requests therefor he must state the rules of law adopted by him for his guidance as a trier of fact in order that the right of review thereof may be preserved.”
See also Cameron v. Buckley, 299 Mass. 432, 433. Home Savings Bank v. Savransky, Mass. A. S. (1940) 2115, 2117.
Where, as here, the finding was a general finding, it must stand if warranted upon any rational view of the evidence. Herman v. Sadolf, 294 Mass. 358, 360, and cases there cited. And the finding for any party imports a finding of all subsidiary facts essential to that conclusion and must stand unless unsupported by the evidence. Mahoney v. Norcross, 284 Mass. 153. And such a general finding im *176 ports a finding of subsidiary facts and the drawing of all rational inferences essential to that conclusion. MacDonald v. Adamian, 294 Mass. 187, 190, 191. See also Home Savings Bank v. Savransky, Mass. A. S. (1940) 2115 at page 2119.
It may also be said that the trial judge was not obliged to make findings of fact, although requested so to do. Castano v. Leone, 278 Mass. 429, 431. Maglio v. Lane, 268 Mass. 135. Cameron v. Buckley, 299 Mass. 432, 434.
It was said in Eastern Mutual Insurance Co. v. Atlantic National Bank, 260 Mass. 485, 488:
“The law is settled that ‘A banker having no interest in the matter, who pays out money on deposit on the fraudulent order of the person who by the terms of the deposit had the right to draw on the account, is liable only when he is privy to the depositor’s fraud. ’ ” Newburyport v. First National Bank of Boston, 216 Mass. 304, citing Allen v. Puritan Trust Co., 211 Mass. 409.
And it was also there said:
“The burden of proving the banker privy to the fraud is on the party who asserts it.” Allen v. Fourth National Bank, 224 Mass. 239, 244.
If the contract here entered into was represented not only by the bank’s pass books but by the signature cards, which were a part of the contract, and said contract was ratified by any act of the plaintiff corporation, then the defendant bank paid out the money on deposit to the person who by the terms of the deposit had a right to draw the same. It seems to us that the question of whether or not there was. such ratification was a question of fact for the trial court and his general finding imports a finding of all subsidiary facts. The trial court could have found that the *177 officers and directors of the plaintiff corporation ratified the opening of the account with the Winter Hill Co-operative Bank; that it, by its proper officers, made checks payable to said bank monthly on account of the shares contracted for by the president named on the signature card. The book issued by said bank was kept in the strong box of the company and available at all times to its officers.
It could also have been found that the officers knew of the changing of the Winter Hill Co-operative Bank into the Winter Hill Co-operative Federal Savings and Loan Association, because the new pass book continued to be kept in the strong box of the corporation and readily accessible to all its officers; that checks were paid monthly by the proper officers of the company to the defendant.
It is a matter of common knowledge that in all cases concerning the opening of a bank account, signature cards are required by the bank, and that some authorized signature which the bank is justified in recognizing is contained thereon.
There is no contention that the defendant bank was in any way privy to the fraud of the plaintiff’s president in drawing out and converting the money to his own use. Whether the president of the plaintiff corporation upon all the evidence was clothed with ostensible authority was a question of fact. Federal National Bank of Boston v. O’Connell, Mass. Adv. Sh. (1940) 665, 672.
It is argued by the plaintiff that the manner in which the defendant bank dealt with these withdrawals, namely, in issuing a check to the plaintiff corporation and upon its being endorsed by the- plaintiff corporation, by the president, cashing the same, was notice in and of itself that the transaction insofar as the president’s plaintiff corporation *178 was concerned was fraudulent, but it was said in Eastern Mutual Insurance Co. v. Atlantic National Bank, 260 Mass. 485, 489:
“Decisions have been in conflict with regard to the effect, as notice of wrongdoing, that a check, signed by an officer of a corporation or by one in a fiduciary capacity, is payable to the officer or trustee personally from a deposit of the funds of the corporation or trust estate. The consistent decisions of this court and the weight of authority establish that the form of such a check is not in itself notice of improper conduct sufficient to put the holder upon inquiry.” See cases cited. See also Banks v. Everett National Bank, Mass. Adv. Sh. (1940) 209, 212.
This also, it seems to us, presented a question of fact for the trial court and the plaintiff is concluded by his general finding for the defendant.
In Kelly v. Citizens Finance Company, Mass. Adv. Sh. (1940) 1287, 1288, it was said:
“The authority to manage the business affairs of a corporation is primarily vested in its board of directors. Its president and treasurer, merely as the holders of those offices, have little or no inherent power to bind the corporation outside of a comparatively narrow circle of functions specially pertaining to their offices.” See cases cited.
But it has been repeatedly held in Massachusetts that while the treasurer, in the absence of a by-law or some vote to the contrary, is only a ministerial officer of the corporation, the president is the chief executive officer of the company, and when authorized so to do may perform any function within the corporate powers. Such authority may be expressly conferred, as in Lydia E. Pinkham Medicine Company v. Gove, Mass. Adv. Sh. (1940) 251, or it may be *179 inferred from the acts of the officers of the company, as in Federal National Bank of Boston v. O’Connell, Mass. Adv. Sh. (1940) 665, 672, or it may be inferred from the granting to the president of the powers of a general manager. See Kelly v. Citizens Finance Company, Mass. Adv. Sh. (1940) 1287, 1288.
In the case at bar it could have been found by the trial judge by reasonable inference that the president, who was also the general manager of the plaintiff corporation, had the right to deal with the account in the defendant bank in the manner in which he did so deal. This whole matter was a fact to be determined by him sitting as a fact finding tribunal. Produce Exchange Trust Company v. Bieberbach, 176 Mass. 577. Beacon Trust Company v. Souther, 183 Mass. 413. Forgeron v. Corey Hill Garage, Inc., 249 Mass. 163.
It follows that the trial judge was correct in denying requests for rulings numbered 1, 2, 3, 4 and 7. It is also clear that the trial judge erred in refusing to instruct himself as requested by ruling numbered 6. This was a correct statement of law. The plaintiff was entitled to this ruling or to a statement of facts found by the trial judge indicating that the ruling had become immaterial. Bresnick v. Heath, 292 Mass. 293, 298. Strong v. Haverhill Electric Company, 299 Mass. 455. Home Savings Bank v. Savransky, Mass. Adv. Sh. (1940) 2115, 2117, 2118. We cannot say that this was without error prejudicial to the plaintiff. The finding for the defendant is vacated and a new trial is ordered.