## Go-Best Assets Limited *vs.* Citizens Bank of Massachusetts.

Suffolk. April 3, 2012. - July 30, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Bank. Negligence,* Bank, Duty to prevent harm. *Attorney at Law,* Misuse of client funds, Fiduciary duty. *Fraud. Fiduciary. Conversion.*

In a civil action arising out of an attorney's scheme to defraud the plaintiff, the judge properly dismissed the claim against the defendant bank for negligence based on its failure to notify the Board of Bar Overseers (board) of dishonored checks issued on the attorney's client account more than six months before the plaintiff wired funds into that account, where there was no evidence in the record to support a reasonable inference that the bank had actual knowledge the attorney had been misappropriating funds in his client account or intended to misappropriate the plaintiff's funds in that account, and therefore owed no duty to the plaintiff to take reasonable steps to prevent the misappropriation the plaintiff suffered; and where, without such actual knowledge, and given the issue of fact whether the account was a "trust account" within the meaning of Mass. R. Prof. C. 1.15 (h), the bank's duty to notify the board of the dishonored checks from that account, under the terms of the bank's agreement with the board in accordance with rule 1.15 (h), arose only from its contractual duty, and therefore, the bank owed no duty of care to those whose funds were held in that account [54-64]; for similar reasons, the judge properly dismissed claims against the bank for aiding and abetting fraud, breach of fiduciary duty, and conversion [64].

CIVIL ACTION commenced in the Superior Court Department on February 6, 2001.

A motion to dismiss with respect to one defendant was heard by *Allan van Gestel,* J., and the case with respect to other defendants was heard by him on a motion for summary judgment; entry of separate and final judgment was ordered by *Ralph D. Gants,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Donn A. Randall* (*Carol E. Kamm* with him) for the defendant.
*Erik H. Langeland* for the plaintiff.

GANTS, J. In July, 2000, the plaintiff, Go-Best Assets Limited (Go-Best), wired $5 million to an account entitled "Morris M. Goldings client account" (client account) at Citizens Bank of Massachusetts (Citizens Bank or bank) based on representations made by Morris M. Goldings, who was then a Massachusetts attorney. Goldings later admitted that the representations were false and that he had used the money to pay other debts. Go-Best filed suit against Citizens Bank, bringing claims of misrepresentation, conversion, aiding and abetting a fraud, aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and negligence in its first amended verified complaint (complaint).[1] A judge in the Superior Court granted Citizens Bank's motion to dismiss the claims, but a divided panel of the Appeals Court reversed in part, vacating the dismissal of Go-Best's claims of negligence and of aiding and abetting. *Go-Best Assets Ltd.* v. *Citizens Bank*, 79 Mass. App. Ct. 473, 495 (2011). We granted Citizens Bank's application for further appellate review of the resurrected claims.[2] The issue presented in this case is whether Citizens Bank may be found liable on these claims where it had no knowledge of Goldings's scheme to defraud Go-Best but failed to notify the Board of Bar Overseers (board) of dishonored checks issued on the client account more than six months before Go-Best wired funds into that account. We conclude that it may not be found liable and affirm the dismissal of these claims.

*Background.* Because the motion judge's memorandum and order considered facts in the affidavit and exhibits submitted with Go-Best's opposition to the motion to dismiss, we treat the order of dismissal as one for summary judgment and summarize the relevant facts in the complaint, affidavit, and exhibits. See *Juliano* v. *Simpson*, 461 Mass. 527, 529 (2012).

---

[1]Go-Best Assets Limited (Go-Best) also sought an accounting by Citizens Bank of Massachusetts (Citizens Bank) of Go-Best's funds in the "Morris M. Goldings client account" (client account) in its first amended verified complaint (complaint). In addition, Go-Best brought various claims against Morris M. Goldings; his wife, Jean B. Goldings; his partners at the law firm of Mahoney, Hawkes & Goldings, LLP; and PaineWebber, Incorporated. Only the claims against Citizens Bank are relevant to this appeal.

[2]Go-Best did not apply for further appellate review of the claims as to which dismissal was affirmed by the Appeals Court, so we limit our review to the resurrected claims.

During the relevant time period, Goldings was a Massachusetts attorney who was a partner in the law firm of Mahoney, Hawkes & Goldings, LLP (law firm). In 1997 through 1999, Go-Best and an affiliated entity made two separate loans to Goldings, which were repaid with accrued interest and profit. In each transaction, the loaned funds were transferred to an account entitled "Morris M. Goldings client account," one at Fleet Bank and another at Citizens Bank. Goldings represented that these accounts were "trust accounts," that the funds would be held in trust for Go-Best in these accounts, and that the accounts were stringently monitored because they were held for the benefit of his clients. Go-Best did not allege that either of these banks made any representation regarding the accounts.

In July, 2000, Goldings represented to Go-Best that he had a client who wanted to relinquish his shares of stock in Starwood Hotels and Resorts, Inc. (Starwood), to avoid a conflict with a new position for which he was being considered. Starwood stock was then selling at approximately thirty dollars per share, but Goldings told Go-Best that it was predicted that a tender offer would be made for Starwood shares before the end of the year at approximately forty dollars per share. Goldings proposed that Go-Best lend Goldings $5 million at an interest rate of two per cent per month and, in return, Goldings would execute a promissory note and place in escrow 170,000 shares of Starwood common stock and the $5 million. If a tender offer were received on or before January 2, 2001, the shares would be tendered and Go-Best would be repaid $5 million with accrued interest, plus one-half of the net profits arising from the sale of stock. If no tender offer were received by that date, the stock would be transferred and sold, and Go-Best would be repaid $5 million with accrued interest and receive one-half of any net profits.

Goldings told Go-Best to wire the funds to his client account at Citizens Bank. He assured Go-Best that the funds would be held in trust in his account and would be safe because of the careful scrutiny such accounts receive at Citizens Bank. He also assured Go-Best that the stock certificates and loaned funds would be held in escrow by an agent of PaineWebber Securities (PaineWebber). In reliance on these representations, Go-Best sent $5 million to the client account in July, 2000, through two

wire fund transfers. Go-Best then received from Goldings an escrow receipt that purportedly acknowledged the receipt of the stock and the money on behalf of PaineWebber. In December, 2000, Goldings reported to Go-Best that there were no shares of Starwood stock; that PaineWebber had never received the funds; that Goldings fraudulently executed the documents relating to the transaction, including the escrow receipt; and that he no longer had Go-Best's money because he had used it to repay other debts. Goldings did not return any of Go-Best's funds.

In the complaint, Go-Best alleged:

> "Citizens Bank knowingly participated in the fraud or conversion or provided substantial assistance to Goldings to accomplish the fraud or conversion . . . by . . . allowing Goldings to use his client funds account to . . . engage in unlawful transactions through his accounts . . . , in failing to follow its own procedures relating to detecting, preventing, and reporting fraudulent activities to the proper authorities, in failing to follow the appropriate banking regulations relating to fraudulent activities, in losing documents relating to such transactions so as to cover them up, and in allowing Goldings to transact irregular cash and wire transactions."

But Go-Best has made no specific allegation, nor submitted any evidence in the summary judgment record, that would support an inference that Citizens Bank knew of Goldings's scheme to defraud Go-Best of its $5 million or made any representations to Go-Best.

Rather, Go-Best submitted evidence that Goldings made large deposits to his client account from February, 1999, through October, 2000, and that four checks written on this account were dishonored. The most recent dishonored checks were dated January 13, 2000, one in the amount of $20,000 and another in the amount of $760,460. Monthly bank statements for this account revealed a negative balance in December, 1999; April, 2000; and May, 2000.[3] Go-Best alleges that, although Citizens Bank had executed an agreement with the board that it would

---

[3] The record does not reflect whether Goldings had an overdraft agreement or line of credit with Citizens Bank that enabled him to maintain a negative balance in the client account.

report to the board all dishonored payable instruments presented against any "trust account," the bank did not report any of the dishonored checks written on the client account. In addition, in late 1999 or early 2000, a bank customer service representative transferred $200,000 from the law firm's Interest on Lawyers' Trust Account (IOLTA) at Goldings's request, even though the representative later admitted that he should not have done that and had no authority to do that because all such transfers had to be approved by the law firm's accounting department.

*Discussion.* We review a grant of summary judgment de novo to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, . . . the moving party is entitled to a judgment as a matter of law." *Juliano* v. *Simpson,* 461 Mass. 527, 529-530 (2012), quoting *Augat Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). We address first the negligence claim in the complaint, because if that claim fails, the others must, too.

1. *Negligence.* To make out a claim for negligence, the plaintiff must show that the defendant "owed him a duty of reasonable care, that the [defendant] committed a breach of that duty, that damage resulted, and that there was a causal relation between the breach of duty and the damage." *Leavitt* v. *Brockton Hosp., Inc.,* 454 Mass. 37, 39 (2009). As both the motion judge and the Appeals Court recognized, in this case the negligence claim turns on whether Citizens Bank owed Go-Best a duty of care, which is a question of law. *Id.* at 40.

A bank generally does not have a duty to investigate or inquire into the withdrawal of deposited funds by a person authorized to draw on the account to ensure that the funds are not being misappropriated. See *Boston Note Brokerage Co.* v. *Pilgrim Trust Co.,* 318 Mass. 224, 227-228 (1945); *Kendall* v. *Fidelity Trust Co.,* 230 Mass. 238, 242 (1918). See also *Lerner* v. *Fleet Bank, N.A.,* 459 F.3d 273, 287 (2d Cir. 2006) (*Lerner*). But we have recognized that such a duty arises where a bank has actual knowledge of an intended or apparent misappropriation of funds and its failure to act would constitute participation or acquiescence in the misappropriation. See *Boston Note Brokerage Co.* v. *Pilgrim Trust Co., supra* at 227 ("A bank that is merely the drawee of a check ought not to be made liable to the payee for

anything short of participation or assistance in a known or apparent misappropriation of funds"); *Eastern Mut. Ins. Co.* v. *Atlantic Nat'l Bank*, 260 Mass. 485, 488 (1927), quoting *Newburyport* v. *First Nat'l Bank*, 216 Mass. 304, 304-305 (1914) ("The law is settled that '[a] banker having no interest in the matter, who pays out money on deposit on the fraudulent order of the person who by the terms of the deposit had the right to draw on the account, is liable only when he is privy to the depositor's fraud' "); *Kendall* v. *Fidelity Trust Co.*, *supra* at 242 ("there is no evidence that the defendant knew [the assistant treasurer of the trust] intended to misappropriate the funds and the defendant therefore cannot be held liable"); *Schlichte* v. *Granite Sav. Bank*, 40 Mass. App. Ct. 179, 181 (1996) ("bank's liability turns on its actual knowledge of a misappropriation of the depositor's funds").

Go-Best contends that Citizens Bank should have recognized that Goldings was engaged in the misappropriation of client funds based on his unauthorized transfer of $200,000 of his law firm's IOLTA funds in late 1999 or early 2000, many months before Go-Best wired the $5 million to Goldings's client account. Where the summary judgment record does not reflect whether the law firm's clients suffered any loss from this unauthorized transfer, this information alone is insufficient to support a reasonable inference that the bank knew that Goldings was using his client account at the bank in July, 2000, to misappropriate funds from his clients.[4] Without such knowledge, the bank did not have a duty to take reasonable steps to prevent the misappropriation.

Go-Best also contends that Citizens Bank should have recognized from the frequency of the dishonored checks and the negative balances in the client account that Goldings was misap-

[4]The record before the motion judge on Citizens Bank's motion to dismiss did not reflect the disposition of the $200,000 in Interest on Lawyers' Trust Account (IOLTA) funds. But the record on the subsequent motion for summary judgment brought by Goldings's law firm's partners showed that Goldings caused the money to be transferred to his client account at Citizens Bank, and that the IOLTA account was repaid in full within approximately one week. Even if this information were to be treated as part of the record on Citizens Bank's motion, it would only strengthen our conclusion that the bank had no reason to know in July, 2000, that Goldings intended to misappropriate the funds wired to him by Go-Best.

propriating funds in the client account. See generally Mass. R. Prof. C. 1.15, as appearing in 440 Mass. 1338 (2004). We recognize that this information demonstrates a significant risk that an attorney may be making improper personal use of client funds. Because of this risk, we require attorneys to maintain "trust accounts" within the meaning of Mass. R. Prof. C. 1.15 (a) (2) only in banks that have executed an agreement with the board to notify the board of all dishonored checks presented against "trust accounts."[5] See Mass. R. Prof. C. 1.15 (h) (1). But a risk of misappropriation alone is not enough to support an inference that the bank had actual knowledge of an attorney's intended or apparent misappropriation of client funds. See *Boston Note Brokerage Co.* v. *Pilgrim Trust Co.*, *supra* at 227, and cases cited ("In this Commonwealth, and by the weight of authority elsewhere, a bank upon which a check is drawn is not liable for the embezzlement of the proceeds by a payee who is a fiduciary, or by an agent of the payee authorized to collect the check, merely because the fiduciary or agent causes the check or its proceeds to be deposited in his personal account, much less because he collects the check in cash"). See also *Lerner*, *supra* at 294 (dishonored checks, negative balances in fiduciary accounts, and transfers from fiduciary accounts to personal accounts are "red flags" that may put bank on notice "that some impropriety may have been taking place," but "do not create a strong inference of actual knowledge" of attorney's theft of client funds). We conclude that there is no evidence in the record to support a reasonable inference that Citizens Bank had actual knowledge that Goldings had been misappropriating funds in his client account or intended to misappropriate the Go-Best funds in his client account, and therefore the bank owed no duty to take reasonable steps to prevent the misappropriation suffered by Go-Best.[6]

Go-Best also argues that, even if the bank did not have the

[5]A "[t]rust account" as defined in Mass. R. Prof. C. 1.15 (a) (2), as appearing in 440 Mass. 1338 (2004), "means an account in a financial institution in which trust funds are deposited." "[T]rust funds" are funds of "clients or third persons that [are] in a lawyer's possession in connection with a representation and include[] property held in any fiduciary capacity in connection with a representation, whether as trustee, agent, escrow agent, guardian, executor, or otherwise." Mass. R. Prof. C. 1.15 (a) (1), as appearing in 440 Mass. 1338 (2004).

[6]Where a bank has a duty of care, the duty is to take reasonable steps to prevent the misappropriation. When one looks pragmatically at what would

actual knowledge of a misappropriation necessary to owe Go-Best a duty to prevent the withdrawal or transfer of Go-Best's funds for Goldings's personal use, it owed a duty under its agreement with the board, executed in accordance with Mass. R. Prof. C. 1.15 (h), to notify the board of the dishonored checks from the client account and provide the board with a copy of each dishonored check. We agree that, if the client account were a "trust account,"[7] Citizens Bank would have owed a duty under its agreement with the board to notify the board of the

have been required here if Citizens Bank owed such a duty, it is easier to understand why we limit the duty to those rare circumstances where a bank has actual knowledge of an intended or apparent misappropriation. Once Citizens Bank accepted Go-Best's payment orders, it was obligated under Article 4A of the Uniform Commercial Code, adopted by the Legislature in 1991, G. L. c. 106, § 4A, inserted by St. 1991, c. 286, § 2, to pay the $5 million to the client account by the next business day. G. L. c. 106, § 4A-404 (*a*) ("bank is obliged to pay the amount of the order to the beneficiary of the order . . . on the payment date after the close of the funds transfer business day"). Even if Go-Best had attempted to prevent payment to the client account by claiming that Goldings was not entitled to payment because of fraud or breach of contract (which Go-Best did not do here), the bank still is obligated to make the payment. See official comment 3 to U.C.C. § 4A-404, 2B (Part II) U.L.A. 98 (Master ed. 2002). "The fraud or breach of contract claim of the originator may be grounds for recovery by the originator from the beneficiary after the beneficiary is paid, but it does not affect the obligation of the beneficiary's bank to pay the beneficiary." *Id.* The bank's duty to pay the wired funds to Goldings's account supersedes any common-law duty the bank may owe to those whose funds are at risk of misappropriation. "Where a [Uniform Commercial Code] provision specifically defines parties' rights and remedies, it displaces analogous common-law theories of liability." *Gossels* v. *Fleet Nat'l Bank*, 453 Mass. 366, 370 (2009), and cases cited. See official comment to U.C.C. § 4A-102, 2B (Part II) U.L.A. 18 (Master ed. 2002) ("resort to principles of law or equity outside of Article 4A [of the Uniform Commercial Code] is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article").

Therefore, if Citizens Bank owed a duty of care, it could not have prevented the funds from being deposited in Goldings's client account and instead would have had to take reasonable steps to prevent Goldings from misappropriating the Go-Best funds in his client account, either by freezing the account or otherwise ensuring that the Go-Best funds were safeguarded. The intrusive nature of such steps and the interference with the account holder's access to funds deposited in his account is justified only where the bank has actual knowledge of an intended or apparent misappropriation.

[7]Citizens Bank had executed an agreement with the Board of Bar Overseers (board) to notify the board of dishonored instruments on "[t]rust account[s]," as defined in Mass. R. Prof. C. 1.15 (a) (2).

dishonored checks, and there appears to be no dispute that the bank did not provide this notification.

Citizens Bank contends that, as a matter of law, the client account here was not a "trust account." We agree with the Appeals Court that, on this record, there are genuine issues of material fact whether the client account was a "trust account," and whether Citizens Bank reasonably knew it was a "trust account." See *Go-Best Assets Ltd.* v. *Citizens Bank*, 79 Mass. App. Ct. 473, 482-483 (2011). An attorney who holds trust funds on behalf of a client or third person is required to deposit those funds in one of two types of interest-bearing "trust accounts": an IOLTA account where trust funds from multiple clients are pooled "which in the judgment of the lawyer are nominal in amount, or are to be held for a short period of time," or "an individual account with the interest payable as directed by the client or third person on whose behalf the trust property is held." Mass. R. Prof. C. 1.15 (e) (5). The parties agree that the client account was not an IOLTA account; under the IOLTA committee guidelines that we adopted, Goldings could have established an IOLTA account only by delivering an attorney's notice of enrollment form to Citizens Bank, and the record does not reflect that Goldings provided the bank with this form for the client account. See Guidelines for Interest on Lawyers' Trust Accounts (IOLTA), Mass. Ann. Laws Court Rules, Supreme Judicial Court Rules, at 687 (LexisNexis 2011-2012); Mass. R. Prof. C. 1.15 (g) (4) (v). But no comparable form is required for an attorney to establish an individual trust account with a bank. Rule 1.15 (e) (2) of the Massachusetts Rules of Professional Conduct provides only that "[e]ach trust account title shall include the words 'trust account,' 'escrow account,' 'client funds account,' 'IOLTA account,' or words of similar import indicating the fiduciary nature of the account." The rule also provides that "[l]awyers maintaining trust accounts shall take all steps necessary to inform the depository institution of the purpose and identity of such accounts," but does not specify what steps are "necessary." *Id.* Here, the account was entitled a "client account," and there is evidence in the record suggesting that Citizens Bank knew or should have known that Goldings was an attorney. But, apart from the name given to the account,

there is nothing in the record to suggest that Goldings informed the bank that his client account was a "trust account." Moreover, the bank statements for the account reflect that the bank did not understand it to be a trust account: the statements were sent to Goldings's home address, rather than the address of his law firm, and interest was redeposited in the account rather than paid directly to the client or third person on whose behalf the funds were supposed to be held.[8]

Because there is an issue of fact whether the client account was a "trust account," we consider whether the contractual duty owed to the board under the agreement entered into in accordance with Mass. R. Prof. C. 1.15 (h) is also a duty of care owed to the plaintiff in this case. "[F]ailure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 368 (1997).[9] If not for the contract entered into with the board, Citizens Bank would have no duty to give notice of dishonored checks to anyone other than the account holder. We are unwilling to transform the bank's contractual duty owed to the board into a duty of care in tort owed to those whose funds are held in a "trust account."

Citizens Bank's contractual duty arises from our regulation of the profession of law through the rules of professional conduct, because we forbid attorneys from maintaining "trust accounts" in banks that have not executed a dishonored check notification agreement with the board. Mass. R. Prof. C. 1.15 (h) (1). Our

[8]Because a bank contractually agrees under Mass. R. Prof. C. 1.15 (h) (4), as appearing in 440 Mass. 1338 (2004), to notify the board of all dishonored instruments presented against any "trust account," including individual non-IOLTA accounts, and because under Mass. R. Prof. C. 1.15 (h) (5), as appearing in 440 Mass. 1338 (2004), every lawyer, as a condition of being admitted to practice in Massachusetts, is "conclusively deemed to have consented" to this reporting requirement for a "trust account," we ask the Standing Advisory Committee on the Rules of Professional Responsibility to consider whether an attorney opening an individual non-IOLTA "trust account" should be required to deliver to a bank a form notifying the bank that the account is a "trust account" to avoid any ambiguity as to the nature of the account.

[9]"'Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made [in a contract].'" *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 368 (1997), quoting W.L. Prosser & W.P. Keeton, Torts § 92, at 656 (5th ed. 1984).

rule requires that such an agreement provide that a bank shall report to the board "in the event any properly payable instrument is presented against any trust account that contains insufficient funds, and the financial institution dishonors the instrument for that reason." *Id.*[10] We require attorneys to maintain "trust accounts" only at banks that have agreed to provide the board with notice of dishonored checks from those accounts because we recognize that dishonored checks, at a minimum, indicate that there is a significant risk that an attorney is not properly safeguarding trust funds, and notification gives the board the opportunity to protect trust funds by making a diligent inquiry and, if necessary, taking appropriate action.

When we promulgated Mass. R. Prof. C. 1.15 (h), we intended that the protection of trust funds be accomplished by the board through its disciplinary process, not by the beneficiaries of trust funds through a new remedy in tort. See *Binns* v. *Board of Bar Overseers*, 369 Mass. 975, 976 (1976) ("The board was established by this court . . . acting in accordance with its power to supervise the conduct of attorneys, and the board exists as the disciplinary arm of this court"). The agreement mandated by the rule requires a bank to provide notice of dishonored instruments to the board, and does not establish any procedure to ensure that notice be provided to an attorney's clients whose funds are held in an attorney's "trust account." See Mass. R. Prof. C. 1.15 (h). Because the board and bar counsel are generally required to keep confidential all information regarding allegations of misconduct by an attorney, they may give such notice to the beneficiaries of trust funds only where notice is necessary "to protect the public, the administration of justice, or the legal profession." S.J.C. Rule 4:01, § 20 (2) (d), as amended, 438 Mass. 1301 (2002).[11] See Rule 3.22 (a) of the Rules of the Board of Bar Overseers (2012). In

[10]"The dishonored check notification agreement shall provide that all reports made by the financial institution shall be identical to the notice of dishonor or customarily forwarded to the depositor, and should include a copy of the dishonored instrument, if such a copy is normally provided to depositors. Such reports shall be made simultaneously with the notice of dishonor and within the time provided by law for such notice, if any." Mass. R. Prof. C. 1.15 (h) (4).

[11]Apart from this exception, and others not relevant here, information regarding allegations of misconduct by an attorney remain confidential until

addition, although we provide in Mass. R. Prof. C. 1.15 (h) (5) that an attorney is "conclusively deemed to have consented to the reporting and production requirements mandated by [Mass. R. Prof. C. 1.15 (h)]," notice to trust beneficiaries would fall outside the scope of this consent because such notice is not mandated by the rule.

Although clients may benefit from board discipline or from bar counsel's investigation, we do not give clients standing to bring formal charges against an attorney; only bar counsel may recommend that formal charges be instituted and only the board may do so. Rule 2.7 (3) of the Rules of the Board of Bar Overseers (2012). See *Gorbatova* v. *Semuels*, 462 Mass. 1012, 1012 (2012) ("there is no private right to commence a court action to seek disciplinary action against an attorney"); *Slotnick* v. *Pike*, 374 Mass. 822, 822 (1977) ("it is the Board of Bar Overseers and not private individuals, which is ordinarily responsible for prosecuting complaints against attorneys"). Similarly, if a bank commits a breach of its agreement with the board to provide notice of dishonored checks, the board has standing to seek a remedy in contract for that breach; we will not give a trust beneficiary a separate remedy in tort by making the contractual obligation owed to the board a duty of care owed to the trust beneficiary.[12]

Even if a bank's duty to notify the board of dishonored checks

---

the service of a petition for discipline, submission of an attorney's resignation, or submission of a recommendation that formal discipline be imposed by agreement. S.J.C. Rule 4:01, § 20 (1), as amended, 438 Mass. 1301 (2002). Rule 3.22 (a) of the Rules of the Board of Bar Overseers (2012).

[12]The beneficiary of a trust account also cannot recover in contract as a third-party beneficiary of the board's agreement with the bank. "In order to recover as a third-party beneficiary, the plaintiffs must show that they were intended beneficiaries of the contract between the defendant and the trustees. . . . A party is an intended beneficiary where 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' " *Spinner* v. *Nutt*, 417 Mass. 549, 555 (1994), quoting *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 195 (1982). See *Miller* v. *Mooney*, 431 Mass. 57, 62 (2000) ("We have adopted the rule of the Restatement [Second] of Contracts § 302 [1981], and limit enforcement by beneficiaries to those who are *intended* beneficiaries" [emphasis in original]). "It must appear from 'the language and circumstances of the contract' that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiaries to benefit from the promised performance." *Miller* v. *Mooney, supra*, quoting *Anderson* v. *Fox Hill Village Homeowners Corp., supra* at 366-367. For the reasons earlier

were required by statute rather than by a contract mandated by our rule, such a statutory duty would not create a duty of care in tort in the absence of legislative intent to create a private right of action. See *Juliano* v. *Simpson*, 461 Mass. 527, 531-532 (2012). "A duty of care must already exist before a plaintiff can use a defendant's statutory violation to support a claim of tort liability." *Id.* at 532. See *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358 (1990) (where statute does not provide private right of action, "[a]ny liability on the defendant's part" for violation of statute "must be grounded in the common law of negligence").

We conclude that, because there is no evidence that Citizens Bank had actual knowledge of Goldings's intended or apparent misappropriation of Go-Best's funds in Goldings's client account, the bank had no duty in tort to take reasonable steps to prevent the misappropriation. Without such actual knowledge, the bank's duty to notify the board of dishonored checks from "trust accounts" arose only from its contractual duty, not from any duty in tort, so the bank could not be liable to Go-Best for any negligence in fulfilling that duty.

In reaching this conclusion, we note that the facts in this case are dramatically different from those in *Lerner*, which the Appeals Court found to be "persuasive" in reaching its conclusion that "the evidence of Citizens Bank's knowledge of the chronic insufficiency of funds in a client funds account, if proven, would trigger a duty of reasonable care on the part of Citizens Bank to all those who, like Go-Best, subsequently placed funds in that account, to make reasonable inquiry and to endeavor to prevent a diversion." *Go-Best Assets, Ltd.* v. *Citizens Bank*, 79 Mass. App. Ct. 473, 480 (2011).

In *Lerner, supra* at 287-290, the United States Court of Appeals for the Second Circuit, applying New York law, concluded that investors who were defrauded by an attorney in a multimillion dollar Ponzi scheme had stated a viable claim of negligence

stated, Mass. R. Prof. C. 1.15 (h) does not suggest that the clients of lawyers who have trust fund accounts at banks that have executed a dishonored check notification agreement are intended to benefit from the agreement between the bank and the board. We note that Go-Best has not claimed in its complaint that it is entitled to recover in contract as a third-party beneficiary.

against the banks that held the attorney's fiduciary accounts. The plaintiffs alleged that the bank manager of Fleet Bank told the attorney that Fleet Bank would no longer honor his checks drawn against insufficient funds by extending automatic loans to cover the overdrafts. *Id.* at 282. The attorney responded that, if the bank did so, the bank would be required by law to report the overdrafts to New York's Lawyers' Fund for Client Protection (lawyers' fund) and, if he were disbarred, he would no longer bring business to the bank and the bank would bear the loss associated with his then-current overdrafts. *Id.* The bank manager agreed not to report the overdrafts to the lawyers' fund and to tell the fund in response to its inquiries that the attorney had "double-digit million-dollar balances" in his accounts. *Id.* When the attorney later told the bank manager he was having trouble explaining the bounced checks to investors, the bank manager and his superiors agreed to return the checks to the payees and mark them as "Refer to Maker," without indicating that they were being returned for insufficient funds. *Id.*

As alleged in the *Lerner* complaint, Sterling National Bank and Trust Company of New York (Sterling Bank) was equally complicit in concealing the attorney's repeated overdrafts. After Sterling Bank discovered overdrafts in the attorney's fiduciary accounts and an executive vice-president of Sterling Bank told the attorney it was required to report the dishonored checks to the lawyers' fund, the attorney told the executive vice-president how Fleet Bank was handling this problem and Sterling Bank, too, agreed to mark overdrafts as "Refer to Maker" and did not report the overdrafts to the lawyers' fund. *Id.* When a representative of a corporation that had received a check marked "Refer to Maker" asked Sterling Bank why the check had been returned, the executive vice-president falsely said there were "back office problems" that had "nothing to do with [the attorney]," and falsely confirmed that there were sufficient funds in the attorney's account to cover the check. *Id.* at 282-283.

In *Lerner*, in sharp contrast with this case, the defendant banks purposely enabled the attorney to continue to write checks against overdrawn fiduciary accounts, intentionally concealed the overdrafts from the lawyers' fund to protect the attorney from being disbarred, and deceived those who inquired into the

solvency of his accounts. In short, the facts as alleged in *Lerner* put the banks on notice of the attorney's misappropriation of trust funds, and the banks substantially assisted in that misappropriation by affirmatively concealing information with the intent of allowing the misappropriation to continue. See *id.* at 295. If presented with comparable facts, we, too, would likely allow a negligence claim to proceed.

2. *Aiding and abetting.* For the same reasons that summary judgment is appropriate on Go-Best's negligence claim against Citizens Bank, it is also appropriate on Go-Best's claims that the bank aided and abetted fraud, breach of fiduciary duty, and conversion. To prove that the bank aided and abetted a tort, the plaintiff must show: (1) that Goldings committed the relevant tort; (2) that the bank knew he was committing the tort; and (3) that the bank actively participated in or substantially assisted in his commission of the tort. See *Arcidi* v. *National Ass'n of Gov't Employees*, 447 Mass. 616, 623-624 (2006); Restatement (Second) of Torts § 876 (b) (1977). We have already concluded that there is no evidence that Citizens Bank knew of Goldings's intent to misappropriate Go-Best's funds or shared his intent to accomplish the misappropriation. And there is no evidence that the bank actively participated in or substantially assisted in any fraud, breach of fiduciary duty, or conversion committed by Goldings against Go-Best. Consequently, none of the aiding and abetting claims survives summary judgment.

*Conclusion.* We affirm the motion judge's grant of summary judgment as to all claims against Citizens Bank.

*Judgment affirmed.*